# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

IN RE: SEALED CASE

On Appeal from the United States District Court
for the District of Columbia, No. 24-mc-00007 (JEB)
Before the Honorable Chief Judge Boasberg

## BRIEF FOR APPELLANT X CORP.

GEORGE P. VARGHESE
WILLIAM C. DARIO
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
george.varghese@wilmerhale.com
will.dario@wilmerhale.com

EMILY BARNET
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
emily.barnet@wilmerhale.com

ARI HOLTZBLATT
BENJAMIN POWELL
MICHAELA WILKES KLEIN
JEREMY W. BRINSTER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave., NW
Washington, DC 20037
(202) 663-6000
ari.holtzblatt@wilmerhale.com
benjamin.powell@wilmerhale.com
michaela.wilkesklein@wilmerhale.com
jeremy.brinster@wilmerhale.com

May 14, 2024

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Appellant X Corp. certifies as follows:

## A.     Parties And Amici

Appellant X Corp. (formerly Twitter, Inc.) appeared in the district court and is a party in this Court.

Appellee United States of America appeared in the district court and is a party in this Court.

No amici appeared in the district court and no amici have appeared before this Court.

## B.     Rulings Under Review

The rulings under review include the district court's March 29, 2024 memorandum opinion and order denying X Corp.'s Motion to Vacate or Modify Nondisclosure Order and Stay Compliance with Subpoena and granting the United States' Motion to Compel Compliance with Subpoena (C.J. Boasberg).  JA047; JA048-076.  The rulings under review also include the December 11, 2023 Nondisclosure Order.  JA011.

## C.     Related Cases

This case has not previously been before this Court or any court other than the district court below.  The *ex parte* nondisclosure order under review was

entered in *In re Application of USA for a 2705(b) Nondisclosure Order for Grand Jury Subpoenas Bearing USAO Case # 2023R01292*, SC No. 23-sc-2631 (D.D.C.).

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure and Circuit Rules 26.1 and 27(a)(4), Appellant X Corp. certifies that X Corp. is a privately held corporation. Its parent corporation is X Holdings Corp.  No publicly traded corporation owns ten percent or more of the stock of X Corp. or X Holdings Corp.

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

CORPORATE DISCLOSURE STATEMENT ........................................ iii

TABLE OF AUTHORITIES ...................................................................vi

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ........................................................4

RELEVANT STATUTES AND CONSTITUTIONAL PROVISIONS ...................4

STATEMENT OF ISSUES .....................................................................4

STATEMENT OF THE CASE...................................................................5

    A.    The Stored Communications Act ...........................................5

    B.    The Government Annually Obtains Thousands Of Orders
        Barring X And Other Providers From Disclosing Requests For
        User Information ...................................................................7

    C.    The "Omnibus" Nondisclosure Order And Subpoena Served On
        X ......................................................................................10

    D.    Procedural History..............................................................14

STANDARD OF REVIEW ...................................................................17

SUMMARY OF ARGUMENT ...............................................................18

ARGUMENT ....................................................................................20

I.    NEITHER THE STORED COMMUNICATIONS ACT NOR THE FIRST
    AMENDMENT PERMITS OMNIBUS NONDISCLOSURE ORDERS ..........................20

    A.    An Omnibus Nondisclosure Order Violates The Act ........................20

        1.    Section 2705(b)'s plain text prohibits omnibus
            nondisclosure orders ................................................21

        2.    Reading Section 2705(b) to authorize omnibus
            nondisclosure orders would upend the statutory scheme .........25

        3.    Other statutory nondisclosure regimes confirm that
            Section 2705(b) does not authorize omnibus orders................28

    B.    An Omnibus Nondisclosure Order Violates The First
        Amendment ........................................................................30

C.   The District Court's Policy Arguments Do Not Override The Statute's Plain Text Or X's First Amendment Rights.........................33

II.   THE DISTRICT COURT ERRED BY UPHOLDING THE ORDER BASED ON *EX PARTE* EVIDENCE WITHHELD FROM X ........................................37

A.   X Has A Due Process Right To Respond To The *Ex Parte* Materials Purportedly Justifying A Restraint On Its Speech .............37

B.   The Government's Interest In Grand-Jury Secrecy Does Not Outweigh X's Due Process Interest ....................................................40

1.   The district court did not determine whether the *ex parte* materials implicate any interest in grand-jury secrecy .............41

2.   X's due process interests outweigh the government's interests ....................................................................................44

III.   THE ORDER DOES NOT SATISFY STATUTORY OR CONSTITUTIONAL REQUIREMENTS EVEN BASED ON WHAT LITTLE IS KNOWN OF THE GOVERNMENT'S JUSTIFICATIONS....................................................51

CONCLUSION ........................................................................................55

CERTIFICATE OF COMPLIANCE

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

* *Abourezk v. Reagan*, 785 F.2d 1043 (D.C. Cir. 1986)..............................16, 38, 48

*Almeida-Sanchez v. United States*, 413 U.S. 266 (1973)........................................35

*American Bus Ass'n v. Slater*, 231 F.3d 1 (D.C. Cir. 2000) ....................... 21, 23-24

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) ........................................31, 54

*Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984).....................17

* *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011) .............31, 40, 52

*Butterworth v. Smith*, 494 U.S. 624 (1990) ........................................................41, 55

*Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886
 (1961)................................................................................................................45

*Carroll v. Princess Anne*, 393 U.S. 175 (1968) ............................................... 39-40

*Citizens for Responsibility and Ethics in Washington v. U.S.
 Department of Justice*, 746 F.3d 1082 (D.C. Cir. 2014) ...............................42

*Clifford v. United States*, 136 F.3d 144 (D.C. Cir. 1998)..................... 17, 46, 49-50

*Corley v. United States*, 556 U.S. 303 (2009)..........................................................23

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ............................................24

*Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211
 (1979)..........................................................................................................42, 46

*Google LLC v. United States*, 443 F. Supp. 3d 447 (S.D.N.Y. 2020) ....................10

*Hartman v. Moore*, 547 U.S. 250 (2006)................................................................54

*In re Antitrust Grand Jury*, 805 F.2d 155 (6th Cir. 1986) ................................44, 49

*In re Grand Jury*, 490 F.3d 978 (D.C. Cir. 2007)....................................................44

*In re Grand Jury Proceedings*, 33 F.3d 342 (4th Cir. 1994)............................48, 49

*In re Grand Jury Proceedings*, 867 F.2d 539 (9th Cir. 1989)................................49

*In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141 (D.C. Cir.
 2006)................................................................................................................49

*In re Grand Jury Subpoena to Facebook*, 2016 WL 9274455
 (E.D.N.Y. May 12, 2016) ...............................................................................26

*In re John Doe Corp.*, 675 F.2d 482 (2d Cir. 1982) .................................49

*In re John Doe, Inc.*, 13 F.3d 633 (2d Cir. 1994) ....................................49

*In re Leopold to Unseal Certain Electronic Surveillance Applications
    and Orders*, 964 F.3d 1121 (D.C. Cir. 2020) ....................... 5-6, 18

*In re Motions of Dow Jones & Co.*, 142 F.3d 496 (D.C. Cir. 1998) ................ 41-43

*In re Sealed Case*, 199 F.3d 522 (D.C. Cir. 2000) ..................................50

* *In re Sealed Case*, 77 F.4th 815 (D.C. Cir. 2023) ......4, 8, 9, 17, 25, 27, 29-30, 53-54

*In re Sealed Case No. 98-3077*, 151 F.3d 1059 (D.C. Cir. 1998) ....................42, 50

*In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F.
    Supp. 2d 876 (S.D. Tex. 2008) ....................................................53

* *In re Taylor*, 567 F.2d 1183 (2d Cir. 1977) ................................. 45-47

*In re Three National Security Letters*, 35 F.4th 1181 (9th Cir. 2022) ....................29

*In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*,
    289 F. Supp. 3d 201 (D.D.C. 2018) ....................................................5

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) .............................................33

*Lane v. Franks*, 573 U.S. 228 (2014).......................................................54

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    591 U.S. 657 (2020)...................................................................23

*Matter of Application of United States*, 45 F. Supp. 3d 1 (D.D.C.
    2014).....................................................................................50

*Matter of Subpoena 2018R00776*, 947 F.3d 148 (3d Cir. 2020) ...........................27

*McCullen v. Coakley*, 573 U.S. 464 (2014) ..............................................35

*McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019) .....................................46

*Microsoft Corp. v. U.S. Department of Justice*, 233 F. Supp. 3d 887
    (W.D. Wash. 2017).....................................................................9

*Morrissey v. Brewer*, 408 U.S. 471 (1972)..............................................45

*National Association of Manufacturers v. Taylor*, 582 F.3d 1
    (D.C. Cir. 2009) .......................................................................32

*Nielsen v. Preap*, 139 S. Ct. 954 (2019) ...............................................24

* *Niz-Chavez v. Garland*, 593 U.S. 155 (2021)...................................23, 34

*Noel Canning v. NLRB*, 705 F.3d 490 (D.C. Cir. 2013).................................21

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
    487 U.S. 781 (1988)................................................................35

*SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348 (2018) ................................30

*Satawa v. Macomb County Road Commission*, 689 F.3d 506 (6th Cir.
    2012) ......................................................................................54

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)...............................55

*SEC v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir. 1980)
    (en banc) ............................................................................ 42-43

*Shaw v. Hunt*, 517 U.S. 899 (1996) ........................................................54

*Slack Technologies, LLC v. Pirani*, 598 U.S. 759 (2023) ......................21

\* *United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004) ...........38, 48

*United States v. Aguilar*, 515 U.S. 593 (1995) ......................................55

*United States v. Brown*, 483 F.2d 1314 (D.C. Cir. 1973).......................33

*United States v. Microsoft Corp.*, 56 F.3d 1448 (D.C. Cir. 1995).........37

*United States v. Napue*, 834 F.2d 1311 (7th Cir. 1987).........................40

*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803
    (2000)................................................................................32, 39

*United States v. United States District Court for Eastern District of
    Michigan*, 407 U.S. 297 (1972) ...................................................28

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) .........................................54

*Williams-Yulee v. Florida Bar*, 575 U.S. 433 (2015) ................. 32-33, 55

## DOCKETED CASES

*In re Application of USA for 2703(d) Order for Six Email Accounts
    Serviced by Google LLC*, No. 20-sc-3361 (D.D.C.)........................9

*In re Specified Email Accounts*, No. 1:18-mj-00723 (E.D.N.Y.) ...........10

## STATUTES AND RULES

5 U.S.C. § 7211 .......................................................................................54

12 U.S.C. § 3420 .....................................................................................30

**FILED UNDER SEAL**

18 U.S.C.

§ 983 ...................................................................................29
§ 2518 .................................................................................29
§ 2701 ...................................................................................5
§ 2702 ...................................................................................5
§ 2703 ........................................................................ 4-5, 27, 52
* § 2705 ...........................6, 10, 14-16, 20-26, 28-31, 33-35, 43, 51-52
§ 2709 .................................................................................29
§ 3103a ...............................................................................29
§ 3123 .................................................................................29

28 U.S.C.

§ 1291 ...................................................................................4
§ 1331 ...................................................................................4

31 U.S.C. § 5318 .........................................................................30

Fed. R. Crim. P. 6.............................................................29, 46, 50

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 99-647 (1986)............................................................28

H.R. Rep. No. 117-361 (2022)............................................................9

**OTHER AUTHORITIES**

Google, *Global Requests for User Information*, https://tinyurl.com/
3u2wmreh (visited May 14, 2024) ..................................................7

Microsoft, *Law Enforcement Requests Report*, https://tinyurl.com/
mtu6a2jr (visited May 14, 2024) ...................................................8

Nicas, Jack, et al., *In Leak Investigation, Tech Giants Are Caught
Between Courts and Customers*, N.Y. Times (June 16, 2021),
https://tinyurl.com/3t2tmhk8 ...................................................7, 9

Savage, Charlie & Katie Benner, *U.S. Waged Secret Legal Battle To
Obtain Emails of 4 Times Reporters*, N.Y. Times (June 9,
2021), https://tinyurl.com/5efm753e ...............................................8

Schmidt, Michael & Charlier Savage, *Apple Is Said To Have Turned
Over Data On Trump's White House Counsel In 2018*, N.Y.
Times (June 13, 2021), https://tinyurl.com/23yfnm85.................................8

**FILED UNDER SEAL**

U.S. Department of Justice, *Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b)* (Oct. 19, 2017), https://tinyurl.com/u9pkvk3v ..............................................................6

U.S. Department of Justice, *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations* (2009), https://tinyurl.com/3tytvr9r ..............................................................35

U.S. Department of Justice, *Supplemental Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b)* (May 27, 2022), https://tinyurl.com/yyvcap42 .......................... 6-7

Yaccarino, Linda, *One Year In, The Future of X is Bright*, X Blog (Oct. 26, 2023), https://tinyurl.com/5ky6dpfx.................................................7

X Help Center, *Guidelines for Law Enforcement*, https://tinyurl.com/3zvhr77f (visited May 14, 2024) ....................................9

X Transparency Center, *Sharing Our Latest Transparency Update, Marking Decade Long Commitment*, https://tinyurl.com/mr3s9tf5 ..............................................................................................7

**INTRODUCTION**

This case turns on the statutory and constitutional validity of a sweeping nondisclosure order that the government refers to as an "omnibus" nondisclosure order. These omnibus orders—which are not mentioned anywhere in federal law—purport to apply prospectively to subpoenas issued investigation-wide up to a year (or more) later, not to specific subpoenas issued to specific providers for specific accounts. The government revealed in this litigation that it has been obtaining these orders in sealed, *ex parte* proceedings around the country, but this is apparently the first time the practice has been publicly challenged. Omnibus orders violate the Stored Communications Act (the "Act") and the First Amendment, both of which require a court itself to determine whether and how the government can restrict a provider's speech, rather than leaving it to law enforcement's discretion.

The omnibus order in this case (the "Order") facially prohibits X from disclosing a subpoena demanding that X turn over to the FBI the records of two users. As with other omnibus orders, before the government served this Order, no court determined that disclosure of this particular subpoena would harm the FBI's investigation. X moved to vacate the Order on the grounds that it violated the Act and infringed X's First Amendment right to disclose the subpoena to its users. Those users may be able to challenge this investigation as retaliatory because ██

████████████████████████████████████████████████████

████████████████████████████████████████. X also argued

that due process required an opportunity to see and respond to the government's *ex parte* submissions purporting to justify the Order.

The district court erred in rejecting X's arguments. *First*, the district court was wrong to hold that the Act and First Amendment permit omnibus orders. The Act's text and structure require a subpoena-specific determination by a neutral magistrate that disclosure of "*the* … subpoena" will result in a statutorily enumerated harm. The Order circumvents that statutory requirement by empowering law enforcement alone to decide to attach the Order to any subpoena up to a year (or more) later without any further judicial review. Similarly, the First Amendment requires the government to prove that restraining disclosure of this particular investigatory step would serve a compelling government interest—which the government necessarily failed to do when it asked the court to allow it to determine whether nondisclosure of any subpoena issued in this investigation was justified.

*Second*, the district court violated due process when it rejected X's claims based on *ex parte* submissions. Throughout its opinion, it relied on facts and legal arguments withheld from X, and refused to reveal even information "publicly known about the investigation's targets." JA055. The district court acknowledged

that due process ordinarily entitles a party to respond to the evidence on which the

government and the court rely but believed that right could be overcome here

because of a vague interest in "grand-jury" secrecy. But the court never evaluated

whether disclosing any or all of the *ex parte* materials would actually reveal

matters occurring before the grand jury. And in any event, X's right to respond to

the *ex parte* materials far outweighed the government's interest in secrecy in this

case. X has a significant interest in rebutting the evidence and arguments offered

by the government in support of restraining X's First Amendment-protected

speech. On the other hand, the government has minimal interest in secrecy here

because X already knows a grand jury has been convened and an investigation is

underway, at least some of the materials are apparently public, and the materials

can be revealed to X alone on an attorneys' eyes only basis in a sealed proceeding.

*Third*, the district court erred by holding that the Order satisfies the Act and

the First Amendment. The public record raises serious doubts about whether the

government could have made the showing required to restrict disclosure. Both

targets of the investigation ███████████████████████. There appears to be

no indication in the public record that notifying them of the subpoena would lead

to flight, evidence-tampering, or serious jeopardy to the investigation. ███████

███████████████████████████████████████. And the

government can guard against destruction of evidence by requiring X to preserve any records sought.

This Court should reverse.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331. *See also* 18 U.S.C. § 2703(d) (permitting review of Stored Communication Act orders). The final order denying X's requests for relief was entered on March 29, 2024. JA047; *see* 28 U.S.C. § 1291. X timely appealed. JA077. This Court has jurisdiction to review the district court's order denying X's motion to vacate or modify the Order under the collateral order doctrine. *In re Sealed Case*, 77 F.4th 815, 824 (D.C. Cir. 2023).

## RELEVANT STATUTES AND CONSTITUTIONAL PROVISIONS

Relevant statutes and constitutional provisions are set forth in an addendum to this brief.

## STATEMENT OF ISSUES

1.     Whether the Stored Communications Act and First Amendment prohibit courts from issuing an omnibus nondisclosure order that neither considers nor specifies the provider, account, and legal process covered and therefore allows the government to determine, in its sole discretion, when a provider should be restrained from notifying its users about a particular subpoena.

2.      Whether the district court violated X's due process rights by upholding the Order based on *ex parte* submissions.

3.      Whether the district court erred by holding that the Order, issued in an already public criminal inquiry, comports with the Stored Communications Act and First Amendment.

## STATEMENT OF THE CASE

### A.    The Stored Communications Act

The Stored Communications Act protects the privacy of individuals who use electronic communications services like X. The Act "bestows upon" providers "great[] responsibilities regarding the disclosure and safeguarding of … electronic information" by prohibiting providers from divulging user records or the contents of user communications except in narrow, statutorily defined circumstances. *In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201, 203 (D.D.C. 2018); *see also* 18 U.S.C. §§ 2701, 2702. One such circumstance is when law enforcement obtains a warrant, subpoena, or court order. *See* 18 U.S.C. § 2703.

These government demands for user communications are presumptively public: The Act "contains no 'default sealing or nondisclosure provisions'" preventing a provider from disclosing legal process to its user. *In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121,

1129 (D.C. Cir. 2020). Instead, when the government wants to "displace[] the usual presumption in favor of [disclosure]," *id.* at 1130, it must "apply to a court for an order commanding" the provider "to whom a warrant, subpoena, or court order is directed … not to notify any other person of the existence of the warrant, subpoena, or court order," per 18 U.S.C. § 2705(b). Before entering such an order, Section 2705(b) requires that "the court … determine[] that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in" one of five enumerated harms: "(1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial." *Id.*

The Justice Department has issued guidance interpreting the Act's requirements. Its 2017 guidance emphasizes that permitting providers to disclose legal process to their users is the norm and that the government should seek nondisclosure orders "only … when circumstances require." U.S. Dep't of Justice, *Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b)*, at 2 (Oct. 19, 2017). Supplemental guidance from 2022 reaffirms that a nondisclosure order "should be sought only after a prosecutor engages in a case- and fact-specific analysis." U.S. Dep't of Justice, *Supplemental Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b)*, at 2 (May 27,

2022). When the government applies for a nondisclosure order, it "must provide a court with sufficient facts to permit the court to conduct the same case- and fact-specific analysis" by "tailor[ing] the application to include the available facts that permit 'an individualized and meaningful assessment regarding the need for protection from disclosure.'" *Id.*

### B. The Government Annually Obtains Thousands Of Orders Barring X And Other Providers From Disclosing Requests For User Information

X operates a leading global social media platform where hundreds of millions of active users engage in public and private conversations.[1] It receives thousands of subpoenas, court orders, and warrants each year for these users' information.[2] Other online providers, such as Google, Apple, Microsoft, and Facebook likewise receive tens of thousands of subpoenas, warrants, and court orders a year under the Act.[3]

---

[1] Yaccarino, *One Year In, The Future of X is Bright*, X BLOG (Oct. 26, 2023), https://tinyurl.com/5ky6dpfx.

[2] X Transparency Center, *Sharing Our Latest Transparency Update, Marking Decade Long Commitment* (July 28, 2022)*,* https://tinyurl.com/mr3s9tf5.

[3] Google, *Global Requests for User Information*, https://tinyurl.com/3u2wmreh (visited May 14, 2024) (Google received more than 60,000 requests in the first half of 2023); Microsoft, *Law Enforcement Requests Report* (visited May 14, 2024), https://tinyurl.com/mtu6a2jr (noting 28 percent of legal demands Microsoft received were covered by nondisclosure orders, amounting to 1,465 such orders in a six-month period); Nicas et al., *In Leak Investigation, Tech Giants Are Caught Between Courts and Customers*, N.Y.

Many of these requests for user information are covered by nondisclosure orders that block providers from speaking about the requests until they expire months or years later. For example, nondisclosure orders have applied to a subpoena issued to Google to obtain the email logs of journalists in connection with a leak investigation and subpoenas to Apple for the data of Members of Congress and a then-White House counsel. These subpoenas both came to light only after the nondisclosure orders expired and prompted public debate over the "Trump Administration's efforts to find the sources of news stories."[4]

These orders may impede users' ability to protect their constitutional and common-law privileges. For example, the government has attached a nondisclosure order to a demand for information that may be subject to executive privilege. *See In re Sealed Case*, 77 F.4th at 823, 827. The government also has attached a nondisclosure order to a demand implicating journalists' interests in maintaining the confidentiality of their sources.[5] Providers likely lack standing to

---

Times (updated June 16, 2021), https://tinyurl.com/3t2tmhk8 (Apple received "more than 250 data requests … each week" in 2018 and Facebook received "nearly 123,000 data requests" in 2020) ("*Leak Investigation*").

[4] Savage & Benner, *U.S. Waged Secret Legal Battle To Obtain Emails Of 4 Times Reporters*, N.Y. Times (June 9, 2021), https://tinyurl.com/5efm753e; Nicas, *Leak Investigation*; Schmidt & Savage, *Apple Is Said To Have Turned Over Data On Trump's White House Counsel In 2018*, N.Y. Times (June 13, 2021), https://tinyurl.com/23yfnm85.

[5] Savage & Benner, *supra* n.4.

assert these privileges on behalf of their users and may not even realize they are producing potentially privileged documents at the time they comply with legal process.[6]

Congress has criticized the government's nondisclosure order practices. In a 2022 report, the House Judiciary Committee observed that experts "generally agree that the process to obtain a nondisclosure order has become a box-checking exercise," "'without any meaningful analysis of either the need for secrecy or the orders' compliance with fundamental constitutional rights.'" H.R. Rep. No. 117-361, at 7, 8 (2022).

Nondisclosure orders are contrary to X's commitment to notify users about government requests for their account information.[7] X therefore, as a matter of corporate policy and consistent with its obligations to its users, challenges nondisclosure orders where it has reason to believe they may be improper or unfounded. *See, e.g.*, *In re Sealed Case*, 77 F.4th at 815. Other providers have done the same. *See* Order, *In re Application of USA for 2703(d) Order for Six Email Accounts Serviced by Google LLC*, No. 20-sc-3361 (D.D.C. Mar. 3, 2021),

---

[6] Nicas, *Leak Investigation*, *supra* n.3 ("Without knowing it, Apple said, it had handed over the data of congressional staff members, their families and at least two members of Congress[.]").

[7] *See* X Help Center, *Guidelines for Law Enforcement* https://tinyurl.com/3zvhr77f (visited May 14, 2024).

ECF No. 4, at 1; *Google LLC v. United States*, 443 F. Supp. 3d 447, 451, 456 (S.D.N.Y. 2020); *In re Specified Email Accounts*, No. 1:18-mj-00723 (E.D.N.Y. Sept. 7, 2018), ECF Nos. 8, 13; *Microsoft Corp. v. United States Dep't of Justice*, 233 F. Supp. 3d 887 (W.D. Wash. 2017).

### C. The "Omnibus" Nondisclosure Order And Subpoena Served On X

On January 5, 2024, the D.C. U.S. Attorney's Office served a subpoena on X seeking customer or subscriber account information for two users, ███████████ ████████████. JA006. The subpoena was accompanied by a nondisclosure order. A magistrate judge had issued the Order almost a month earlier, on December 11, 2023, in response to an application "for a Section 2705(b) nondisclosure order for grand jury subpoenas bearing USAO Case # 2023R01292." JA011. It directs "the recipient of the attached subpoena ('PROVIDER') … not to notify any person of the existence of the attached subpoena" bearing the number of the investigation. *Id.* The Order states that "the Court finds reasonable grounds to believe that such disclosure will result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, and serious jeopardy to the investigation." *Id.* The Order then commands that "PROVIDER and its employees shall not disclose the existence of the attached subpoena to any other person" except its attorneys for one year. *Id.*

The government confirmed in its briefing below that the Order served on X was an "omnibus" nondisclosure order, ██████████████████████████████ ████████. *See* JA035; Surreply 3 n.1. From what X understands, when the government seeks an omnibus order, it asks the court to enter an order that will apply prospectively to subpoenas issued during the entire lifespan of an investigation (subject to any durational limits)—untethered to a specific subpoena, warrant, or court order that already exists. The government then itself decides whether subpoenas satisfy the criteria the omnibus order sets out (if any) and to attach the order mandating nondisclosure.

In this case, the government attached the Order to a subpoena seeking account information for two X accounts ██████████████████████████████ ██████████████████████████████████████████.

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████ ████████████████████████

_____

██████████████████████████████████████
██████████████████████████████████████





**D.** **Procedural History**

X moved to vacate the Order, arguing that it violated the Act and the First Amendment.  It also moved to compel disclosure of the *ex parte* application the government submitted in support of the Order so that it could respond in a sealed filing to the factual basis for the government's restraint on its speech.  Mem. In Support of X Corp.'s Mot. to Vacate 2-3 ("Mem.").  X explained that it was concerned that the Order restricted X from notifying the two users about a potentially retaliatory investigation ███████████████████████ ████████ Mem.9-16.

The government opposed X's motion, and attached to its opposition a nearly-entirely redacted version of the *ex parte* application.  JA014-15; JA035-046.  The government disclosed only the investigation reference number and the application's title, which revealed that—as X had surmised, Mem.19-20—the government sought "an omnibus non-disclosure order pursuant to 18 U.S.C. § 2705(b)," JA035.  In addition to redacting all the facts in the application, the government redacted nearly a page of supplemental evidence purporting to support the Order.  JA015-018.  The government also redacted its entire analysis of why a compelling interest supported the Order, JA022-023, key details supposedly showing that the Order was narrowly tailored, JA025, and significant portions of

its analysis of how disclosure of the subpoena would result in statutory harms, JA026-027.

The district court denied X's motion, rejecting each of its arguments. JA048. *First*, the court held that the Act and the First Amendment permitted the Order. As to the Act, the court concluded that X "ask[ed] too much of three letters" by relying on the requirement that a court determine disclosure of "'the warrant, subpoena, or court order'[] will result in statutory harm." JA058 (quoting 18 U.S.C. § 2705(b)). The court recognized that "the word 'the' … 'indicat[es] that a following noun or noun equivalent is definite or has been previously specified by context.'" *Id.*. But it opined that because "'the warrant, subpoena, or court order'" refers back to "'a' warrant, subpoena, or court order for which the Government is seeking [a nondisclosure order]," "[t]he word 'the'" does not identify a particular warrant, subpoena, or court order. JA058-059. It also held that a court can assess whether a statutory harm "will result" without identification of a specific subpoena, even though X was "[n]o doubt correct" that a court cannot conduct that analysis "absent any information whatsoever about the legal process or to whom it is directed." JA059. In the court's view, it was sufficient for the government to "identif[y] a specific category of providers (ECS or RCS providers)" and "a specific category of subpoenas" meeting certain criteria. JA059-060. And it held that X's reading of the statute would "exalt form over

substance" by requiring "'wasteful, unnecessary, [and] burdensome'" applications for each subpoena.  JA060.

As to X's First Amendment argument, the court noted that the government did not contest that X "has a First Amendment interest in informing the target users of the subpoena" "for good reason":  Section 2705(b) nondisclosure orders are both content-based restraints and prior restraints, "call[ing] for strict scrutiny." JA061.  But, in the court's view, "the rubber m[et] the road" upon application of strict scrutiny and it was "not persuaded that the First Amendment prohibits all omnibus [nondisclosure orders]."  JA062-063.

*Second*, the court denied X's request for an opportunity to respond to the government's *ex parte* submissions.  JA071, JA075.  The court recognized that "'[i]t is ... the firmly held main rule that a court may not dispose of the merits of a case on the basis of *ex parte*, *in camera* submissions.'"  JA071 (quoting *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986)).  But it held that the government had a "compelling interest" in "preserving 'the ongoing interest in grand jury secrecy'" that outweighed X's due process interest.  JA072.  The court also rejected X's argument that disclosure of the *ex parte* materials was necessary for X to advocate for its First Amendment rights because the Court believed that "[t]his line of reasoning confuses the role of X with that of the court."  JA074.

*Third*, the district court concluded that the particular Order served on X satisfied the Act and the First Amendment.  On the Act, the court rejected X's argument, based on publicly available yet *ex parte* information, that disclosure of the subpoena would not jeopardize the investigation.  *See* JA055.  It explained that its "review of the *Ex Parte* [Order] Application confirms [the government] offered a more-than-adequate showing—based on what is publicly known about the investigation's targets."  *Id.*  As to the First Amendment, the court held that the government had a compelling interest in "preserving the integrity and the secrecy of an ongoing grand-jury investigation," as described in "the evidence outlined in the Government's *ex parte* briefing."  JA064-065.  And the court held that the Order was narrowly tailored because it prohibits X from disclosing only the existence of the subpoena and is time-limited.  JA068-069.

## STANDARD OF REVIEW

The Court reviews the district court's denial of X's motion to vacate *de novo* because it presents "question[s] of law."  *See In re Sealed Case*, 77 F.4th at 829.  Any factual issues presented by the district court's denial of the motion are also reviewed *de novo* because they are "questions of 'constitutional fact.'"  *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 508 n.27 (1984).  The Court reviews the district court's refusal to order disclosure of the *ex parte* materials for abuse of discretion.  *See Clifford v. United States*, 136 F.3d 144, 148 (D.C. Cir.

1998).  The question of "[w]hether the lower court applied the proper legal standard in exercising its discretion, however, is a question of law [that is] reviewed de novo."  *Leopold*, 964 F.3d at 1131.

## SUMMARY OF ARGUMENT

Omnibus nondisclosure orders violate both the Act and the First Amendment.  The Act does not mention or contemplate "omnibus" nondisclosure orders, and further provides that a court must enter an "order … not to notify [anyone] of the existence of *the* warrant, subpoena, or court order" if it "determines that there is reason to believe that notification of the existence of *the* warrant, subpoena, or court order" will result in an enumerated harm.  Congress's repeated use of the definite article "the" makes clear that the statute permits only orders requiring nondisclosure of specific warrants, subpoenas, or court orders.  That reading also aligns with the statutory scheme, which demands that a neutral magistrate—not law enforcement—makes a specific factual finding that harm "will result" from disclosure of specific legal process.

Omnibus orders also cannot satisfy the strict scrutiny required for such content-based prior restraints to pass muster under the First Amendment.  The government cannot demonstrate that omnibus orders serve a compelling government interest because the orders are based on predictions about hypothetical legal process and potential harms far removed from any judicial determination.

And the government cannot meet its burden to prove that no less restrictive alternative would serve its purpose when, rather than obtain an omnibus order covering unspecified future legal process, it could obtain a nondisclosure order supported by evidence that disclosure of a particular subpoena will result in harm.

The district court also violated X's due process rights by denying X's claims based on *ex parte* evidence. The district court held that the government had an "ongoing interest in grand jury secrecy" but did not assess whether disclosing any of the *ex parte* materials would reveal matters occurring before the grand jury or, if it would, whether those matters are already known to X. And the government's interest—in material that contains publicly available information or that could be disclosed in a sealed proceeding—is minimal and is far outweighed by X's due-process interest in not having a court resolve the merits of its constitutional claim based on *ex parte* evidence.

Finally, based on what X knows about the evidence the government proffered, there are reasons to seriously doubt that this particular nondisclosure order can satisfy the Act's or strict scrutiny's requirements. The public record suggests that disclosure would not result in any of the statutorily enumerated harms because ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███ ; and the government can require X to preserve the records sought or that may be sought from X, thereby eliminating any concern about destruction of evidence in X's possession.  For the same reasons, nondisclosure is not necessary to further any compelling government interest as required by strict scrutiny.  And the government cannot show that no less restrictive alternatives would accomplish its goals as effectively—indeed, the government has offered no evidence X knows of that justifies restricting disclosure of this particular investigative step.

## ARGUMENT

I.  ### NEITHER THE STORED COMMUNICATIONS ACT NOR THE FIRST AMENDMENT PERMITS OMNIBUS NONDISCLOSURE ORDERS

Section 2705(b) permits a court to order nondisclosure only if the court determines that disclosure of a particular subpoena will result in statutory harm. The court does not do that when the government attaches a preexisting nondisclosure order to a new subpoena that did not exist when the court made its factual determination.  And such an order cannot satisfy First Amendment scrutiny because the government cannot demonstrate that an omnibus nondisclosure order covering hypothetical subpoenas months into the future serves a compelling interest.

### A.    An Omnibus Nondisclosure Order Violates The Act

The text and structure of Section 2705(b) both dictate that the Act does not authorize omnibus nondisclosure orders covering innumerable future legal process.

- 20 -

### 1. Section 2705(b)'s plain text prohibits omnibus nondisclosure orders

The text of Section 2705(b) authorizes the government to apply "for an order … not to notify any other person of the existence of *the* warrant, subpoena, or court order." 18 U.S.C. § 2705(b) (emphasis added). And it authorizes a court to "enter such an order" only if it has reason to believe "notification of the existence of *the* … subpoena … will result" in specific enumerated harms, such as flight from prosecution or evidence-tampering. *Id.* (emphasis added). The Act uses the definite article "the" to specify both the legal process that the government must identify in its application and the legal process whose disclosure the court must assess. The Act thus makes clear that the government may apply for, and the court may issue, only nondisclosure orders that are tied to a specific warrant, subpoena, or court order.

This reading reflects how Congress generally uses the definite article. "[I]t is a rule of law well established that the definite article 'the' particularizes the subject which it precedes." *American Bus Ass'n v. Slater*, 231 F.3d 1, 4-5 (D.C. Cir. 2000); *see Noel Canning v. NLRB*, 705 F.3d 490, 500 (D.C. Cir. 2013), *aff'd*, 573 U.S. 513 (2014) ("Unlike 'a' or 'an,' that definite article suggests specificity."). When a statute refers to "misleading omissions in 'the registration statement,'" for example, it means "the particular registration statement alleged to be misleading." *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 766-767 (2023). Here,

Section 2705(b)'s reference to "the … subpoena" that the government must apply for and that the court must evaluate means the particular subpoena whose disclosure the government claims will result in harm.

This is likewise how we use similar language in everyday life.  If a friend says, "I read a newspaper the other day and was impressed by the newspaper's fearless reporting," the friend plainly means to compliment the work of specific journalists in a specific edition.  The friend does not mean that any issue of any paper is praiseworthy, regardless of the coverage or its authors.  So too here:  By saying the government may apply for an order commanding a provider to whom a subpoena is directed not to disclose the existence of *the subpoena*, and providing that the court must enter a nondisclosure order if disclosure of *the subpoena* will result in a statutory harm, Congress plainly meant that a nondisclosure order can cover the specific subpoena that is the subject of the government's nondisclosure application and the court's analysis of statutory harm.

If Congress meant to authorize *omnibus* nondisclosure orders, it would have used different language.  Congress could, for example, have authorized the government to apply for "an order commanding a provider … to whom a warrant, subpoena, or court order is directed … not to notify any other person of the existence of any such warrant, subpoena, or court order."  And it could have said the court "shall enter an order if it determines that there is reason to believe that

notification of the existence of <u>a</u> warrant, subpoena, or court order will result in" statutory harm. But "Congress did not write the statute that way." *Corley v. United States*, 556 U.S. 303, 315 (2009). A construction that permits omnibus orders would impermissibly "alter, rather than interpret," the Act's text. *See Little Sisters of Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 677 (2020).

The district court's reading of Section 2705(b) flouts these fundamental principles. The court began on solid footing, acknowledging that the phrase "the … subpoena" must refer to a subpoena that is "definite or ha[s] been previously specified by context." JA058. But the court veered off track when it concluded this use of the definite article did not "mandate … a subpoena-specific, provider-specific [order]." JA059. In the court's view, by "focusing on the word 'the,'" X "asks too much of three letters." JA058. Instead, the court held, the statute's initial reference to "a … subpoena" means that its later references to "the … subpoena" are somehow stripped of their definite nature. JA058-059.

The opposite is true. X reads the statute as Congress has drafted it. Sometimes, "a lot … turns on a small word." *Niz-Chavez v. Garland*, 593 U.S. 155, 161 (2021). Both this Court and the Supreme Court routinely recognize that Congress selects the definite article to serve as "'a word of limitation'" that "'particularizes the subject which it precedes.'" *Slater*, 231 F.3d at 4-5. When the

Americans With Disabilities Act states that the remedies set forth in Title II of the Civil Rights Act are "the remedies" available, the use of the definite article "the" limits a plaintiff's potential relief to the remedies Title II specifies. *See id.* Likewise, when the Immigration and Nationality Act states that the government shall take custody of any alien who falls into one of four categories "when the alien is released," the statute uses the definite "the alien" to make clear that the range of aliens who may be taken into custody has "been settled by the time" the alien "is released." *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019). And when the Constitution authorizes Congress to call forth "the militia," it permits Congress "not to organize 'a' militia … but to organize 'the' militia, connoting a body already in existence." *District of Columbia v. Heller*, 554 U.S. 570, 596 (2008).

The district court was wrong to conclude that "the" does not specify any subpoena because it refers back to "a" subpoena. Section 2705(b)'s reference to "a … subpoena" is not an indefinite description of *any* subpoena "for which the Government is seeking an [order]." JA058. It refers to concrete legal process that exists and "is directed" at a provider. But even if "a … subpoena" may be indefinite in isolation, the rest of the sentence confirms that the government must specify "the … subpoena" for which it is seeking nondisclosure. The article "a" is used to introduce the specific legal process that will become the subject of a nondisclosure order—a provider to whom "a … subpoena … is directed" can be

ordered not to disclose the existence of "the … subpoena."  18 U.S.C. § 2705(b).

The following sentence cements this understanding, providing that the court shall

enter a nondisclosure order if disclosure of "the … subpoena" will result in

statutory harm.  *Id.*

Citing the Dictionary Act, the district court observed that Section 2705(b)'s

reference to "a … subpoena" can mean "several" subpoenas.  JA059.  But even

assuming a single nondisclosure order can cover multiple subpoenas, the Act's

references to "the" subpoena indicate that multiple subpoenas covered by an order

must be specified at the time the government applies for the order and the court

must assess whether disclosing "the" specific subpoenas will result in harm.

Nothing in the Dictionary Act permits reading "the" to mean "any," as the district

court did here.

> **2.    Reading Section 2705(b) to authorize omnibus
>         nondisclosure orders would upend the statutory scheme**

The district court's interpretation is also incompatible with Congress's

determination that a "neutral and detached judge," *In re Sealed Case*, 77 F.4th at

833, must decide whether a nondisclosure order is appropriate.  The district court

would let that judge abdicate this duty by permitting the government to determine

whether a provider should be prohibited from informing anyone about legal

process.

A court cannot determine whether statutory harm "will result," as Section 2705(b) requires, at the time it issues an omnibus order. When the government applies for a nondisclosure order, it presents the court with a snapshot of the existing facts that support nondisclosure. While the government may convince a court that disclosure will result in evidence- or witness-tampering at the time it applies for the order, those harms may become stale months later, for example if "the target [is] incarcerated and lack[s] effective access to evidence and witnesses," *In re Grand Jury Subpoena to Facebook*, 2016 WL 9274455, at *4 (E.D.N.Y. May 12, 2016), or details of the government's investigation become public. The magistrate cannot simply rely on "the targets' backgrounds and the nature of the offenses for which they are under investigation" to authorize an omnibus nondisclosure order into the future, JA060, without evaluating harm at the time the government seeks to restrict disclosure, particularly given the rapidly developing nature of criminal investigations. The district court therefore was wrong to accept the government's claim that requiring subpoena-specific procedures would create delay "without resulting in any additional information material to the question presented of whether an [order] is warranted." JA061.

Although the district court believed that an omnibus order is redeemed by setting out a "specific *category* of providers" and a "specific *category* of subpoenas" to which it applies, JA059-060 (emphases added), such categories only

highlight the problem.  Here, the "category of providers" specified was apparently no more circumscribed than the entire universe of providers who may be served with legal process under Section 2703 ("ECS or RCS providers")—leaving it entirely to the government's discretion.  *See* JA059-060.  And the government avers that the omnibus order is limited to "the same set of core facts set forth in [the government's] application" (as determined by the government when it attaches the order to a subpoena) "and meeting the specific enumerated parameters of the types of subpoenas for which the [order] may be used."  JA060 (quoting Surreply 4).  But none of the government's "parameters" meaningfully narrows the category of subpoenas for which the government may seek nondisclosure when it requests account data.  JA060.  Allowing the government to decide which future subpoenas share "the same set of core facts" permits it to make precisely the decision that Congress has said a neutral magistrate must make.

The district court's reading disregards the critical interests protected by independent judicial review.  The requirement that a "neutral and detached judge" decide whether nondisclosure is warranted recognizes that prior restraints—which are subject to the strictest constitutional scrutiny—cannot be imposed without proper safeguards.  *See In re Sealed Case*, 77 F.4th at 833; *accord Matter of Subpoena 2018R00776*, 947 F.3d 148, 155 (3d Cir. 2020).  Just as the federal wiretap statute codified the constitutional limits on searches required by the Fourth

Amendment, *see United States v. U.S. Dist. Ct. for E. Dist. of Mich.*, 407 U.S. 297, 302 (1972), Section 2705(b) reflects Congress's constitutionally driven judgment about how to give effect to the limits on prior restraints that the First Amendment demands. *See infra* pp.30-33.

It also reflects Congress's conviction that "the subscribers and customers of remote computing services should be afforded a level of confidence that the contents of records maintained on their behalf … will not be disclosed or obtained by the government, unless … the government has used appropriate legal process *with the subscribers or customers being given an opportunity to protect their rights*." H.R. Rep. No. 99-647, at 73 (1986) (emphasis added). This case exemplifies how nondisclosure orders can deny individuals this "opportunity to protect their rights," as the Order precludes X from notifying its users of a potentially retaliatory investigation. *See supra* pp.11-13. ████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████

### 3. Other statutory nondisclosure regimes confirm that Section 2705(b) does not authorize omnibus orders

Congress's decision to permit nondisclosure under Section 2705(b) only based on a subpoena-specific determination by a neutral magistrate was intentional. Other statutes follow the same particularized approach, including the

civil forfeiture statute, which requires notice unless a court determines there is reason to believe a statutory harm may result, *see* 18 U.S.C. § 983, and sneak-and-peek warrants, which allow law enforcement to delay notification that a warrant has been executed if a court finds reasonable cause to believe that immediate notification may result in a statutory harm, *see id.* § 3103a(b)(1).

But Congress elsewhere has taken a different approach. One example is within Section 2705 itself: Under Section 2705(a), when the government seeks to delay its *own* notice to a user of a subpoena, it may do so by merely certifying that notification may result in harm. No "neutral and detached judge" need be involved. *See In re Sealed Case*, 77 F.4th at 833. Similarly, under 18 U.S.C. § 2709, the FBI may prohibit a provider from disclosing the receipt of a national security letter without prior judicial authorization. *In re Three Nat'l Sec. Letters*, 35 F.4th 1181, 1184 (9th Cir. 2022). Other nondisclosure statutes likewise dispense with judicial involvement by requiring nondisclosure categorically. Rule 6(e)(2), for example, prohibits certain participants in grand-jury proceedings from divulging any matter that occurs there. Fed. R. Crim. P. 6(e)(2). Wiretap and pen register statutes prohibit disclosures until a certain time-period has elapsed, or until otherwise ordered by the court. *See* 18 U.S.C. §§ 2518(8)(d), 3123(d). The Right to Financial Privacy Act forbids financial institutions from notifying any person named in a grand-jury subpoena served on the institution involving certain crimes.

*See* 12 U.S.C. § 3420(b).  And the Bank Secrecy Act requires banks to submit suspicious activity reports triggered by certain transactions and as a rule prohibits banks from notifying the customers involved.  *See* 31 U.S.C. § 5318(g).

Thus, when Congress wants to authorize the kind of "omnibus" nondisclosure order that the government obtained here, it does so through statutory language that applies confidentiality wholesale and without judicial participation. Congress made a different choice in Section 2705(b).  "'[J]ust as Congress' choice of words is presumed to be deliberate' and deserving of judicial respect, 'so too are its structural choices.'"  *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018).

## B.    An Omnibus Nondisclosure Order Violates The First Amendment

This Court has correctly applied strict scrutiny to nondisclosure orders because they "implicate two disfavored types of speech restrictions: prior restraints and content-based restrictions," both of which are "presumptively unconstitutional."  *In re Sealed Case*, 77 F.4th at 829-830.  "Strict scrutiny requires the government to demonstrate that a speech restriction: (1) serves a compelling government interest; and (2) is narrowly tailored to further that interest."  *Id.* at 830.  An "omnibus" order covering any number of unspecified, hypothetical subpoenas into the future cannot meet this demanding test.

The Supreme Court "ha[s] tolerated … a system [of prior restraints] only where it operated under judicial superintendence and assured an almost immediate

judicial determination of the validity of the restraint." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). A construction of Section 2705(b) permitting omnibus orders replaces the "judicial superintendence" that Congress codified with government whim. *See supra* pp.20-28. When the government applies for an omnibus order, a court cannot determine whether the order is narrowly tailored to serve a compelling interest. The government cannot "specifically identify" "an 'actual problem' in need of solving" as strict scrutiny requires because there is not yet any legal process for the court to evaluate. *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 799-800 (2011). For the same reason, the government cannot establish narrow tailoring by showing, with "proof," a "direct causal link" between disclosure of the legal process and statutory harms. *See id.* All the government can offer in support of an omnibus order are predictive judgments about hypothetical legal process not before the court based on facts that may change over time. *See supra* p.26. Such "predictive judgment that such a link exists" based on "ambiguous proof" "will not suffice." *Id.* at 800.

The district court erred by holding that omnibus orders can satisfy strict scrutiny. It concluded that, "[e]ven if the United States had not drafted the specific subpoena by the time it sought the omnibus [order]," a magistrate could determine that it would serve compelling interests in investigatory integrity and secrecy to prohibit "disclosure of any covered subpoenas," regardless of the "exact subscriber

information sought" or provider at issue. JA067. But the district court failed to

recognize that an omnibus order delegates to law enforcement the authority to

determine which of the subpoenas it "had not drafted" yet would be "covered" by

the order, ridding the government of its burden to prove that restraining disclosure

of its investigatory step serves a compelling interest. *See supra* pp.26-28.

Moreover, an omnibus order is *by definition* not narrowly tailored. Narrow

tailoring requires there be no "less restrictive alternative [that] would serve the

Government's purpose." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803,

813 (2000). Here, there is an obviously less restrictive alternative: An order that

applies only to the specific legal process presented to the magistrate at the time the

order is issued.

That some speech restrictions can be narrowly tailored without individually

identifying whose speech they restrict does not mean this one can. *See* JA070. In

*National Association of Manufacturers v. Taylor*, 582 F.3d 1 (D.C. Cir. 2009), the

government could not achieve its goal of compelling disclosures by lobbyists by

compelling disclosures of only a subset of lobbyists. *Id.* at 20. Here, the

government's goal of investigatory integrity can (and must) be served by

restricting speech about only those subpoenas whose disclosure will seriously

jeopardize the investigation. The court's reliance on *Williams-Yulee v. Florida*

*Bar*, 575 U.S. 433 (2015), similarly fails. In *Williams-Yulee*, Florida prohibited

"personal appeals for money by a judicial candidate" based on a conclusion that such appeals "inherently create an appearance of impropriety." *Id.* at 453. By contrast, Congress has not concluded that all providers can be silenced because disclosure of a subpoena "inherently" results in Section 2705(b)'s enumerated harms. Indeed, Congress made disclosure of such subpoenas the default rule.

These serious constitutional concerns, at a minimum, require interpreting Section 2705(b) to forbid omnibus orders. *See Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018). An interpretation that "creates a substantial doubt as to the statute's validity" should be avoided "absent a 'clear statement' of contrary legislative intent." *United States v. Brown*, 483 F.2d 1314, 1317 (D.C. Cir. 1973). Because Section 2705(b) contains no such statement, and omnibus orders raise First Amendment concerns, the Court should not interpret Section 2705(b) to permit them.

## C. The District Court's Policy Arguments Do Not Override The Statute's Plain Text Or X's First Amendment Rights

In the district court's view, it would "exalt form over substance" to require nondisclosure orders to be tied to specific legal process, because that "would surely 'be wasteful, unnecessary, burdensome for the court, and delay the investigation.'" JA060. On the other hand, the court concluded, nothing "would be gained" from forcing the government to obtain subpoena-specific, provider-specific orders

because "'the material underlying facts'" that would be presented in each application "'are the same.'" *Id.*

These policy concerns cannot justify rewriting Section 2705(b). The Supreme Court "has long made plain [that] pleas of administrative inconvenience … never 'justify departing from the statute's clear text.'" *Niz-Chavez*, 593 U.S. at 169. *Niz-Chavez* illustrates just how little weight these efficiency arguments carry. There, the government insisted the statutory term "a notice to appear" could encompass multiple "separate mailings … over time" rather than "a single document." *Id.* at 158. After holding that the statute's language, structure, and history made clear the law required service of a single document, the Court easily dispensed with the government's policy arguments. *Id.* at 169. Complaints that "supplying so much information in a single form is too taxing" held no sway because the Court could not "denigrate this modest statutory promise as some empty formality." *Id.* at 159, 170; *see also id.* at 168 ("[W]e [do not] seek to indulge efforts to endow the Executive Branch with maximum bureaucratic flexibility.").

Claimed administrative inconvenience holds particularly little sway here because, far from a "modest statutory promise," the requirement that nondisclosure orders be tied to particular legal process reflects that nondisclosure orders trigger the strictest First Amendment scrutiny. The Supreme Court has "reaffirm[ed]

simply and emphatically that the First Amendment does not permit the State to sacrifice speech for efficiency." *Riley v. National Fed. of Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988). The government cannot satisfy strict scrutiny by arguing "simply that the chosen route is easier." *McCullen v. Coakley*, 573 U.S. 464, 495 (2014). That this inquiry might require extra work for the government to justify silencing each provider is a feature of the statute, not a defect to be papered over in the name of efficiency. Congress understands that "[t]he needs of law enforcement stand in constant tension with the Constitution's protections of the individual against certain exercises of official power." *Almeida-Sanchez v. United States*, 413 U.S. 266, 273 (1973). "It is precisely the predictability of these pressures that counsels a resolute loyalty to constitutional safeguards," *id.*, and demands adherence to the plain text of Section 2705(b).

Even if these efficiency concerns could be considered, they are overblown here. For warrants and court orders, law enforcement must already obtain court approval for specific legal process before serving a provider, and the government's own guidance expressly contemplates that law enforcement should present a nondisclosure application at that time. *See* U.S. Dep't of Justice, *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations* 141 (2009).

Finally, the government cannot justify omnibus orders by suggesting they are well-established. *See* JA057. Although the government stated the practice dates "back years," ████████████████████████████████████████ ██████████████████████. Surreply 3. And this appears to be the first time the practice has ever been subjected (at least publicly) to adversarial briefing and reasoned decision by a court.[18] ██████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████.[19]

---

[18] While the government has represented that it has obtained omnibus nondisclosure orders in other cases, it has not represented that any was upheld against a challenge by a provider. *See* Surreply 3 n.1. Because these dockets remain sealed, X cannot confirm whether the omnibus nature of those (or any other) nondisclosure orders has been tested by adversarial briefing. But it is a fair assumption that, if the omnibus orders cited by the government had been upheld, the government would have cited to a reasoned judicial opinion.

[19] Flouting the basic requirements of the adversarial process, the government refuses to disclose these sealed nondisclosure orders despite relying on their omnibus nature to support its legal arguments. As with the government's heavy reliance on *ex parte* evidence, that unjustifiably impedes X's ability to respond to the government's arguments. *See infra* pp.37-40.

## II. THE DISTRICT COURT ERRED BY UPHOLDING THE ORDER BASED ON *EX PARTE* EVIDENCE WITHHELD FROM X

X had a due process right to respond to the *ex parte* evidence and arguments presented by the government and relied on by the district court in upholding a restraint on X's First Amendment-protected speech. The district court erred in holding that an abstract interest in "grand-jury secrecy" overrode this right. JA072. The court never determined which, if any, of the *ex parte* submissions would disclose a matter before a grand jury nor whether disclosure to X in a sealed case risked harm to the grand-jury investigation. The only interest the district court identified—maintaining confidentiality that the investigation was ongoing— is minimal given that X already knows there is an investigation and that this is a sealed proceeding. That interest does not outweigh X's due-process interest in an adversarial adjudication of its constitutional claim.

### A. X Has A Due Process Right To Respond To The *Ex Parte* Materials Purportedly Justifying A Restraint On Its Speech

As the district court appeared to agree, its reliance on *ex parte* materials implicated X's due process rights. *See* JA071. The use of *ex parte* materials "conflict[s] with a fundamental precept of our system of justice" that "a fair hearing requires 'a reasonable opportunity to know the claims of the opposing party and to meet them.'" *United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995). It is a "firmly held main rule that a court may not dispose of the

merits of a case on the basis of *ex parte*, *in camera* submissions," *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986), *aff'd*, 484 U.S. 1 (1987). And where individual liberties like First Amendment rights are at stake, due process particularly "demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other." *United States v. Abuhamra*, 389 F.3d 309, 322 (2d Cir. 2004).

X was denied that opportunity here. The district court rejected the merits of X's claims under both the First Amendment and the Act based on secret evidence. The government relied extensively on its *ex parte* submissions in opposing X's motion to vacate the Order. *See* JA015-016, JA017-018, JA022-023, JA025, JA026, JA027, JA029 n.5, JA030 & n.6, JA031, JA032, JA033. The government attached a version of the *ex parte* application that was entirely redacted apart from the investigation reference number and the application's title and included in its opposition nearly a page of supplemental evidence supposedly supporting the Order. JA015-018, JA035. Relying on this evidence, the government redacted its *entire* argument that the Order serves a compelling interest, *see* JA021-023, significant portions of its argument that the Order is narrowly tailored, JA025, and large portions of its argument that disclosure of the subpoena would result in statutory harms, *see* JA026-027. The district court in turn extensively relied on the

government's *ex parte* submissions in upholding the Order. *See* JA055, JA060, JA064, JA065, JA067, JA070. It rejected X's constitutional argument against omnibus orders based on the application that X was not permitted to see. JA067. And the court dismissed X's argument that the government had failed to carry its burden under the Act based on "[t]he Court's review of the *Ex Parte* [Nondisclosure Order] Application." JA055.

The district court's exclusive reliance on *ex parte* submissions to resolve X's First Amendment claim is especially problematic. The Order must satisfy strict scrutiny, which requires that the government provide "specific evidence" demonstrating that the speech restriction is narrowly tailored to serve a compelling government interest. *Playboy Entm't Grp.*, 529 U.S. at 820. "In the absence of evidence and argument offered by both sides and of their participation in the formulation of value judgments, there is insufficient assurance of the balanced analysis and careful conclusions which are essential in the area of First Amendment adjudication." *Carroll v. Princess Anne*, 393 U.S. 175, 183 (1968). For example, in *Playboy*, the Supreme Court's ultimate determination that the government's speech restriction was unconstitutional was based in critical part on the lack of "hard evidence of how widespread or how serious the" purported problem was. 529 U.S. at 819. And in *Brown*, the Court's invalidation of a law restricting violent video games turned on its conclusion that the State's evidence

was "not compelling." 564 U.S. at 800. If the plaintiffs in those cases had no access to the government's evidence, they would have been unable to counter it.

The district court wrongly diminished X's due process interest by concluding that "the court—not the opposing party—assesses whether" the government has satisfied its burden under strict scrutiny. JA074. The district court stated that X's "line of reasoning confuses the role of X with that of the court." *Id.* But "[t]he value of a judicial proceeding … is substantially diluted where the process is ex parte, because the Court does not have available the fundamental instrument for judicial judgment: an adversary proceeding in which both parties may participate." *Carroll*, 393 U.S. at 183. While the court is the ultimate adjudicator, "[a]n *ex parte* proceeding 'places a substantial burden upon the trial judge to perform what is naturally and properly the function of an advocate.'" *United States v. Napue*, 834 F.2d 1311, 1319 (7th Cir. 1987).

### B. The Government's Interest In Grand-Jury Secrecy Does Not Outweigh X's Due Process Interest

The district court failed to identify an actual interest in grand-jury secrecy, let alone one that outweighs X's due process interest. At a minimum, X's interest in adversarial adjudication of its First Amendment rights outweighs the government's interest in preventing X from seeing—in a sealed proceeding—materials that are in the public record or that disclose non-public facts that the

government already has disclosed to X, such as the mere fact of the investigation

or the existence of a grand jury.

### 1. The district court did not determine whether the *ex parte* materials implicate any interest in grand-jury secrecy

"[T]he invocation of grand jury interests is not 'some talisman that dissolves

all constitutional protections.'" *Butterworth v. Smith*, 494 U.S. 624, 630 (1990).

Instead, it allows the government generally to preserve secrecy in a specific

category of information: "matters occurring before the grand jury." *In re Motions*

*of Dow Jones & Co.*, 142 F.3d 496, 502 (D.C. Cir. 1998). The district court

wrongly assumed that the *ex parte* materials bear on the government's "ongoing

interest in grand jury secrecy" simply because this proceeding "is collateral to a

grand-jury investigation." JA072. Disclosing the evidence the government

advances in support of a nondisclosure order would not necessarily disclose

matters occurring before the grand jury. And the district court's revelation that the

government's evidence included information "publicly known about the

investigation's targets," JA055, confirms that the government's redaction of all the

*ex parte* materials was excessive and unjustifiable.

Grand-jury secrecy attaches only to the grand-jury proceedings themselves.

Thus, "matters occurring before the grand jury" include "what has occurred and

what is occurring, [and] what is likely to occur" before the grand jury, such as

"'the identities of witnesses or jurors, the substance of testimony, … the

deliberations or questions of jurors, and the like.'" *In re Motions of Dow Jones & Co.*, 142 F.3d at 500-501 (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc)). That reflects the interests maintaining confidentiality of the proceedings serve: encouraging "full[] and frank[]" testimony by witnesses, reducing risk of flight or tampering by the targets, and protecting the reputations of those accused but exonerated. *See Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979).

Grand-jury secrecy does not extend to any information whatsoever about the subjects of a grand-jury investigation. This Court has rejected the notion that a "veil of secrecy [must] be drawn over all matters occurring in the world that happen to be investigated by a grand jury." *Dresser Indus.*, 628 F.2d at 1382. Nor does "matters occurring before the grand jury" include all information that the grand jury reviewed. While the fact that information was or was not presented to a grand jury may be grand-jury material, *see In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1071 (D.C. Cir. 1998), the information itself is not. "There is no per se rule against disclosure of any and all information which has reached the grand jury chambers." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dept. of Justice*, 746 F.3d 1082, 1100-1101 (D.C. Cir. 2014). And it is "well established that" when information is sought for a lawful and independent purpose—"rather than to learn what took place before the grand jury"—"'it is not a valid defense to disclosure

that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury.'" *Dresser Indus.*, 628 F.3d at 1382; *see id.* at 1382 n.37 (collecting cases).

The government's submissions supporting a nondisclosure order do not "invariably reveal matters occurring before the grand jury." *In re Motions of Dow Jones & Co.*, 142 F.3d at 502. Under Section 2705(b), the application is submitted to a court, not to the grand jury. Therefore, disclosure of the application does not necessarily disclose what was, or was not, presented to the grand jury. That distinguishes proceedings challenging nondisclosure orders, which can "be conducted in such a way that there is no danger of grand jury matters being revealed," from, for example, a motion to immunize a witness. *Id.* And the application does not necessarily contain details *about* the grand-jury proceeding. It might include, for example, information about a target's past attempt to flee from prosecution in an unrelated proceeding or information learned by the FBI that evidence is being tampered with. *See* 18 U.S.C. § 2705(b)(2).

Indeed, the district court's own opinion confirms that the court failed to analyze whether disclosing all of the *ex parte* materials would implicate grand-jury secrecy. It revealed that portions of the *ex parte* application justify nondisclosure based on "what is publicly known about the investigation's targets," and then relied on that public information to uphold the Order. JA055. Publicly known

information such as information about the targets' past conduct cannot possibly qualify as grand-jury material—and it does not become grand-jury material just because the government relied on it when applying for a nondisclosure order.  Nor would that information concern matters occurring before the grand jury even if the government might have separately presented it to the grand jury, which X does not know and would not learn through its disclosure.  The district court should, at a minimum, have required disclosure of such material and any other information submitted *ex parte* that can be disclosed to X alone on an attorneys' eyes only basis without disclosing any matter before the grand jury.

> **2.    X's due process interests outweigh the government's interests**

Even if disclosing some of the materials would reveal "matters occurring before the grand jury," the district court still was required to disclose materials where X's due-process interest outweighed the government's minimal secrecy interest.  *See, e.g.*, *In re Grand Jury*, 490 F.3d 978 (D.C. Cir. 2007) (explaining that courts should "weigh the competing interests" regarding disclosure of grand-jury materials); *see also, e.g.*, *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986) (applying a balancing test).  X's interest is significant: the district court's reliance on *ex parte* materials deprived X of an opportunity to refute claims made by the government going to the merits of X's claims, including a constitutional claim.  On the other hand, the government had little interest in the

secrecy of the fact of the grand jury investigation—the only interest the district court identified—given that it had already disclosed that fact to X and any further disclosures would be in a sealed proceeding.

The Second Circuit's decision in *In re Taylor* is instructive. 567 F.2d 1183, 1188 (2d Cir. 1977). There, the district court disqualified the attorney chosen by the appellant, the recipient of a grand-jury subpoena, because of a conflict between the appellant and other suspects represented by the same attorney. *Id.* at 1185. The district court's decision was based on grand-jury minutes that the government refused to disclose. *See id.* at 1185-1186. To determine whether the appellant received adequate process, the Second Circuit balanced "the nature of the Government interest … against the private interests." *Id.* at 1188 (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972) and *Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886 (1961)). And the court concluded that the private interests "far outweigh[ed] those of the government." *Id.* at 1189. On the private side were "significant [factual] pronouncements … made in derogation of basic constitutional rights and without the benefit of the enlightenment which accompanies an adversary proceeding." *Id.* On the government side, there was a "minimal" secrecy interest in the grand-jury minutes because appellant sought "a limited and discrete disclosure of the factual basis" for the government's claim, not "to rummage through the Government's files," and the government did not "intend

that th[e] information w[ould] never be known to appellant" and did not "state[]

that disclosure would pose a danger to the safety of any individual whose identity

might be identified." *Id.* at 1188, 1189.[20]

Here, like the appellant in *Taylor*, X has weighty interests. Based on *ex

parte* evidence, the district court made factual conclusions about the government's

interest in nondisclosure that were dispositive of X's constitutional and statutory

claims. *See supra* pp.38-39. That is not consistent with due process, which

"requires that a party be aware of and allowed to refute 'the evidence against the

*merits* of his case.'" *Clifford v. United States*, 136 F.3d 144, 149 (D.C. Cir. 1998).

X's First Amendment rights—including a right to be free of a prior restraint—are

certainly as weighty as the constitutional right at issue in *Taylor*.

On the other hand, the government appears to have a minimal secrecy

interest. As in *Taylor*, X sought a "limited and discrete disclosure of the factual

---

[20] This balancing test is consistent with how courts apply Rule 6(e)(3)(E)(i), a "discretionary exception[]" that "permits the court to authorize disclosure of a grand jury matter 'preliminarily to or in connection with a judicial proceeding.'" *McKeever v. Barr*, 920 F.3d 842, 845 (D.C. Cir. 2019) (quoting Fed. R. Crim. P. 6(e)(3)(E)(i)). That rule recognizes "the occasional need for litigants to have access to grand jury" materials and authorizes disclosure of materials where a party can show that the information "is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co.*, 441 U.S. at 220. This test is rightly stricter than the one here because the mere disclosure of grand-jury materials does not implicate due process, unlike the government's choice to rely on grand-jury materials and effort to rely on them *ex parte*.

basis" for the government's position in a sealed proceeding. 567 F.2d at 1188, 1189. And similar to *Taylor*, the district court did not identify any particular risks of disclosure. Setting aside that at least some of the *ex parte* materials are not grand-jury materials at all, *see supra* pp.37-40, the district court did not describe any secrecy interest beyond maintaining confidentiality of the general fact of the investigation, *see* JA072, JA073, JA075 (referring to an "ongoing interest in grand jury secrecy," "protecting grand-jury secrecy," and the "indispensable secrecy of grand jury proceedings"). But X already knows that a grand jury has been convened and that its focus is on ███████████████████████████ ██████████ And the nondisclosure and sealing orders in this case bar X from disclosing anything the government produced. Indeed, X has maintained secrecy since learning about the grand-jury investigation on December 11, 2023, when the government served it with the subpoena and Order. Therefore, the government's interest in withholding these materials from X is minimal and cannot outweigh X's interest in adversarial adjudication of its constitutional rights.

Indeed, courts have held that *ex parte* submissions are impermissible where the plaintiff (unlike here) enjoys a limited liberty interest on the merits and the government (unlike here) presents a compelling interest on the other side. For example, in *Abourezk*, the plaintiffs' First Amendment challenge to visa denials warranted only "very limited constitutional scrutiny" and the government had

raised "legitimate[] … national security interests." 785 F.2d at 1049. Still, this Court noted its "grave concern about the district court's heavy reliance upon *in camera ex parte evidence*" and "caution[ed] the district court" on remand "to make sure that plaintiffs [we]re accorded access to the decisive evidence to the fullest extent possible." *Id.* It explained that "[o]nly in the most extraordinary circumstances does [this Court's] precedent countenance reliance upon *ex parte* evidence to decide the merits of a dispute." *Id.* at 1060. Similarly, in *Abuhamra*, the Second Circuit held that a convicted criminal defendant had just enough "liberty interest in continued release [on bail] … to warrant *some measure* of due process protection," 389 F.3d at 319 (emphasis added), whereas the government had a "strong and legitimate interest in protecting confidential sources from premature identification," *id.* at 324. But in remanding the case for the district court to reconsider its denial of the defendant's request for access to *ex parte* materials, the Second Circuit emphasized that only in "rare cases" could the court rely on *ex parte* evidence. *Id.* at 332.

The cases on which the district court relied only highlight the strength of X's due process interest and the weakness of the government's secrecy interest in this case. Nearly all involved the use of *ex parte* submissions to resolve a dispute about federal common-law privileges, not the merits of a constitutional claim. *See In re Grand Jury Proceedings*, 33 F.3d 342, 351 (4th Cir. 1994) (approving use of

*ex parte* submissions to determine applicability of the crime-fraud exception); *In re John Doe, Inc.*, 13 F.3d 633 (2d Cir. 1994) (same); *In re John Doe Corp.*, 675 F.2d 482, 490 (2d Cir. 1982) (same); *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1151 (D.C. Cir. 2006) (same for a common-law reporter's privilege, explaining that the Court has "approved the use of such a procedure in other cases raising privilege claims"). As this court explained in *Clifford*, *ex parte* submissions "to determine whether documents sought by a party enjoy a privilege against discovery" are permissible, but violate due process where, as here, they are used as "'evidence against the *merits* of [a] case.'" 136 F.3d at 149.

The government's interest in these cases was also far stronger than it is here. Four of those five cases concerned requests by the *target* of a grand-jury investigation to access grand-jury materials, *see In re Grand Jury Proceedings*, 33 F.3d 342; *In re John Doe, Inc.*, 13 F.3d 633; *In re John Doe Corp.*, 675 F.2d 482, which "could seriously impede the function of the grand jury," *In re Grand Jury Proceedings*, 867 F.2d 539, 540 (9th Cir. 1989); *see also In re Antitrust Grand Jury*, 805 F.2d at 162 ("[T]he balance in these types of cases should always be weighted presumptively toward the government when the targets of a grand jury investigation are requesting disclosure of grand jury testimony for use in that proceeding."). The fifth denied access to a reporter whose source was under investigation for unlawfully disclosing information to that same reporter. *Judith*

*Miller*, 438 F.3d at 1143. Here, by contrast, X has only an arms-length relationship with the targets and is not alleged to have been involved in any conduct under investigation.

Another case, *In re Sealed Case No. 98-3077*, 151 F.3d 1059 (D.C. Cir. 1998), is even farther afield. It concerned a Rule 6(e)(2) contempt proceeding for the government's alleged disclosure of confidential grand-jury information, and turned on the "unique nature" of such a proceeding. *Id.* at 1070. The litigant sought *ex parte* materials in a proceeding specifically "designed to guard the sanctity of the grand jury process itself." *Id.* at 1070, 1072. "[A]lthough initiated by a private plaintiff," a Rule 6(e)(2) hearing is not a "typical civil proceeding." *Id.* at 1070. It "is designed to be a supplementary means of enforcing the rules of a criminal proceeding," rather than a means of vindicating the private plaintiff's "'very limited'" rights. *Id.* In contrast, in typical civil proceedings like this one, "[a]n overriding interest in the revelation of truth creates a need for free and open access to evidence." *Id.* at 1069.[21]

---

[21] The district court's other cases are entirely inapposite. *In re Sealed Case*, 199 F.3d 522, 523 (D.C. Cir. 2000), and *Matter of Application of United States*, 45 F. Supp. 3d 1, 6-7 (D.D.C. 2014), rejected requests to publicly docket grand-jury materials. And *Clifford*, 136 F.3d 144, as discussed *supra*, confirms the significance of X's interest in adversarial determination of the merits of its claims.

### III. THE ORDER DOES NOT SATISFY STATUTORY OR CONSTITUTIONAL REQUIREMENTS EVEN BASED ON WHAT LITTLE IS KNOWN OF THE GOVERNMENT'S JUSTIFICATIONS

The government's reliance on *ex parte* submissions makes it virtually impossible for X to refute the evidence the government offered in support of the Order. However, the public record and the face of the Order itself raise serious doubts about whether the government could have made the factual showing that Section 2705(b) and the First Amendment require.

1. The government cannot have demonstrated to a court that disclosure of this subpoena would seriously jeopardize an investigation for the fundamental reason that the Order was issued before this subpoena existed. But even setting that aside, the public record indicates that the government cannot meet its burden to show that disclosure of this subpoena would result in ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ fleeing prosecution, tampering with evidence, or otherwise seriously jeopardizing any investigation. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

███████████████ ████████████████████████

███████████████████████████████████████

███████████

The district court was wrong to conclude that the Order was justified because disclosure would reveal "the existence of the subpoena, issued to aid an ongoing grand-jury investigation." JA055. To satisfy Section 2705(b), the government must do more than claim an interest in keeping *any* grand-jury subpoena secret. The Act permits disclosure of such subpoenas by default and provides a mechanism for law enforcement to require that providers preserve the user records covered by the subpoena. 18 U.S.C. § 2703(f). Similarly, under the First Amendment, the government does not necessarily "have a compelling interest in each marginal percentage point by which its goals are advanced." *Brown*, 564

---

[23] The district court suggested that the government's secret, *ex parte* submissions established that disclosure would result in statutory harms "based on what is publicly known about the investigation's targets." JA055. It is not clear why the government and the district court continue to withhold this information from X.

█ ████████████████

U.S. at 803 n.9.  But on the district court's logic, the government could obtain a nondisclosure order for any new subpoena simply by showing that it was "issued to aid an ongoing grand jury investigation."  JA055.

The district court relied on *In re Sealed Case*, which held only that the government had a compelling interest that "supported nondisclosure of *the* search warrant" in that case.  77 F.4th at 830 (emphasis added).  Those interests were "particularly strong" because the investigation there "ha[d] national security implications" and "aimed to '[f]erret[] out activity intended to alter the outcome of a valid national election[.]'"  *Id.*  But the government cannot invoke the general integrity of its investigation as a shibboleth justifying a nondisclosure order for any new subpoena that it issues:  "[T]he government's legitimate interest in the integrity of its investigation does not automatically trump First Amendment rights."  *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 883 (S.D. Tex. 2008).

Contrary to the district court, JA066-067, the potentially retaliatory nature of the investigation is relevant to whether nondisclosure of this subpoena serves a compelling interest.  The Order prevents X from disclosing to users who ███

████████████████████████████████████████████████████████

███████████ So far as X knows, that information was never presented to the magistrate, meaning the magistrate could not have assured itself that investigatory

- 53 -

integrity was the "actual purpose" behind the government's speech restriction, as strict scrutiny requires.  *See Shaw v. Hunt*, 517 U.S. 899, 908 n.4 (1996); *Satawa v. Macomb Cnty. Rd. Comm'n*, 689 F.3d 506, 522 (6th Cir. 2012).

That the users may not meet the statutory prerequisites for ███████████ ██████████████████████ makes no difference.  The users may be protected by the First Amendment, which "prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."  *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  These protections extend to a public employee's "speech as a citizen on a matter of public concern," including "speech concern[ing] information related to or learned through public employment."  *Lane v. Franks*, 573 U.S. 228, 236, 238 (2014).  And they are activated by "the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation," *Bantam Books*, 372 U.S. at 67, such as a retaliatory investigation, *e.g.*, *White v. Lee*, 227 F.3d 1214, 1228-1229 (9th Cir. 2000).

2.      The Order also is not narrowly tailored, as the First Amendment requires.  The government had to establish, through evidence, that less restrictive alternatives would not "accomplish[] the government's goals equally or almost equally effectively."  *In re Sealed Case*, 77 F.4th at 832.  The government obviously could have pursued the less restrictive means of obtaining an order tailored to the particular subpoena served on X.  *See supra* p.32.

Nor is the Order narrowly tailored because it restricts only "'a narrow slice of speech.'" JA068. Unlike the speech restriction in *Williams-Yulee*, 575 U.S. at 453, the Order is not valid in any application. *See supra* pp.30-33. And unlike the plaintiff in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 25 (1984), X did not learn the restricted information by invoking the court's power to compel production, thereby "voluntarily assum[ing] a duty of confidentiality," *United States v. Aguilar*, 515 U.S. 593, 606 (1995). Instead of the narrow speech restrictions at issue in *Williams-Yulee* and *Rhinehart*, the Order more closely resembles the statute ruled unconstitutional in *Butterworth*, which could be used broadly "to silence those who know of unlawful conduct or irregularities on the part of public officials." 494 U.S. at 635-636. The Order likewise may be preventing X from disclosing potential government retaliation, precisely the type of speech about ""alleged governmental misconduct" that "has traditionally been recognized as lying at the core of the First Amendment." *See id.* at 632.

## CONCLUSION

This Court should reverse the district court's judgment and remand with instructions to vacate the Order.

Respectfully submitted,

/s/ *Ari Holtzblatt*

GEORGE P. VARGHESE
WILLIAM C. DARIO
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

EMILY BARNET
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

May 14, 2024

ARI HOLTZBLATT
BENJAMIN POWELL
MICHAELA WILKES KLEIN
JEREMY W. BRINSTER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave., NW
Washington, DC 20037
(202) 663-6000

# ADDENDUM

**FILED UNDER SEAL**

**ADDENDUM**

**U.S. CONST. amend. I** ...................................................................2

**18 U.S.C. § 2705**........................................................................3

**Fed. R. Crim. P. 6**......................................................................6

## U.S. Const. amend. I

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

## 18 U.S.C. § 2705

### §2705. Delayed notice

(a) Delay of Notification.—

(1) A governmental entity acting under section 2703(b) of this title may—

(A) where a court order is sought, include in the application a request, which the court shall grant, for an order delaying the notification required under section 2703(b) of this title for a period not to exceed ninety days, if the court determines that there is reason to believe that notification of the existence of the court order may have an adverse result described in paragraph (2) of this subsection; or

(B) where an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury subpoena is obtained, delay the notification required under section 2703(b) of this title for a period not to exceed ninety days upon the execution of a written certification of a supervisory official that there is reason to believe that notification of the existence of the subpoena may have an adverse result described in paragraph (2) of this subsection.

(2) An adverse result for the purposes of paragraph (1) of this subsection is—

(A) endangering the life or physical safety of an individual;

(B) flight from prosecution;

(C) destruction of or tampering with evidence;

(D) intimidation of potential witnesses; or

(E) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

(3) The governmental entity shall maintain a true copy of certification under paragraph (1)(B).

(4) Extensions of the delay of notification provided in section 2703 of up to ninety days each may be granted by the court upon application, or by certification by a governmental entity, but only in accordance with subsection (b) of this section.

(5) Upon expiration of the period of delay of notification under paragraph (1) or (4) of this subsection, the governmental entity shall serve upon, or deliver by registered or first-class mail to, the customer or subscriber a copy of the process or request together with notice that—

> (A) states with reasonable specificity the nature of the law enforcement inquiry; and

> (B) informs such customer or subscriber—

>> (i) that information maintained for such customer or subscriber by the service provider named in such process or request was supplied to or requested by that governmental authority and the date on which the supplying or request took place;

>> (ii) that notification of such customer or subscriber was delayed;

>> (iii) what governmental entity or court made the certification or determination pursuant to which that delay was made; and

>> (iv) which provision of this chapter allowed such delay.

(6) As used in this subsection, the term "supervisory official" means the investigative agent in charge or assistant investigative agent in charge or an equivalent of an investigating agency's headquarters or regional office, or the chief prosecuting attorney or the first assistant prosecuting attorney or an equivalent of a prosecuting attorney's headquarters or regional office.

(b) Preclusion of Notice to Subject of Governmental Access.—A governmental entity acting under section 2703, when it is not required to notify the subscriber or customer under section 2703(b)(1), or to the extent that it may delay such notice pursuant to subsection (a) of this section, may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in—

> (1) endangering the life or physical safety of an individual;

(2) flight from prosecution;

(3) destruction of or tampering with evidence;

(4) intimidation of potential witnesses; or

(5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

## Fed. R. Crim. P. 6

\*      \*      \*

**(e) Recording and Disclosing the Proceedings.**

    **(1)** ***Recording the Proceedings.*** Except while the grand jury is deliberating or voting, all proceedings must be recorded by a court reporter or by a suitable recording device. But the validity of a prosecution is not affected by the unintentional failure to make a recording. Unless the court orders otherwise, an attorney for the government will retain control of the recording, the reporter's notes, and any transcript prepared from those notes.

    **(2)** ***Secrecy.***

        (A) No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B).

        (B) Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury:

            (i) a grand juror;

            (ii) an interpreter;

            (iii) a court reporter;

            (iv) an operator of a recording device;

            (v) a person who transcribes recorded testimony;

            (vi) an attorney for the government; or

            (vii) a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii).

    **(3)** ***Exceptions.***

        (A) Disclosure of a grand-jury matter—other than the grand jury's deliberations or any grand juror's vote—may be made to:

            (i) an attorney for the government for use in per forming that attorney's duty;

(ii) any government personnel—including those of a state, state subdivision, Indian tribe, or foreign government—that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law; or

(iii) a person authorized by 18 U.S.C. § 3322.

(B) A person to whom information is disclosed under Rule 6(e)(3)(A)(ii) may use that information only to assist an attorney for the government in performing that attorney's duty to enforce federal criminal law. An attorney for the government must promptly provide the court that impaneled the grand jury with the names of all persons to whom a disclosure has been made, and must certify that the attorney has advised those persons of their obligation of secrecy under this rule.

(C) An attorney for the government may disclose any grand-jury matter to another federal grand jury.

(D) An attorney for the government may disclose any grand-jury matter involving foreign intelligence, counterintelligence (as defined in 50 U.S.C. § 401a), or foreign intelligence information (as defined in Rule 6(e)(3)(D)(iii)) to any federal law enforcement, intelligence, protective, immigration, national defense, or national security official to assist the official receiving the information in the performance of that official's duties. An attorney for the government may also disclose any grand-jury matter involving, within the United States or elsewhere, a threat of attack or other grave hostile acts of a foreign power or its agent, a threat of domestic or international sabotage or terrorism, or clandestine intelligence gathering activities by an intelligence service or network of a foreign power or by its agent, to any appropriate federal, state, state subdivision, Indian tribal, or foreign government official, for the purpose of preventing or responding to such threat or activities.

(i) Any official who receives information under Rule 6(e)(3)(D) may use the information only as necessary in the conduct of that person's official duties subject to any limitations on the unauthorized disclosure of such information. Any state, state subdivision, Indian tribal, or foreign government official who

receives information under Rule 6(e)(3)(D) may use the information only in a manner consistent with any guidelines issued by the Attorney General and the Director of National Intelligence.

(ii) Within a reasonable time after disclosure is made under Rule 6(e)(3)(D), an attorney for the government must file, under seal, a notice with the court in the district where the grand jury convened stating that such information was disclosed and the departments, agencies, or entities to which the disclosure was made.

(iii) As used in Rule 6(e)(3)(D), the term "foreign intelligence information" means:

> (a) information, whether or not it concerns a United States person, that relates to the ability of the United States to protect against—
>
> > • actual or potential attack or other grave hostile acts of a foreign power or its agent;
> >
> > • sabotage or international terrorism by a foreign power or its agent; or
> >
> > • clandestine intelligence activities by an intelligence service or network of a foreign power or by its agent; or
>
> (b) information, whether or not it concerns a United States person, with respect to a foreign power or foreign territory that relates to—
>
> > • the national defense or the security of the United States; or
> >
> > • the conduct of the foreign affairs of the United States.

(E) The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter:

(i) preliminarily to or in connection with a judicial proceeding;

(ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;

(iii) at the request of the government, when sought by a foreign court or prosecutor for use in an official criminal investigation;

(iv) at the request of the government if it shows that the matter may disclose a violation of State, Indian tribal, or foreign criminal law, as long as the disclosure is to an appropriate state, state-subdivision, Indian tribal, or foreign government official for the purpose of enforcing that law; or

(v) at the request of the government if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law.

(F) A petition to disclose a grand-jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened. Unless the hearing is ex parte—as it may be when the government is the petitioner—the petitioner must serve the petition on, and the court must afford a reasonable opportunity to appear and be heard to:

(i) an attorney for the government;

(ii) the parties to the judicial proceeding; and

(iii) any other person whom the court may designate.

(G) If the petition to disclose arises out of a judicial proceeding in another district, the petitioned court must transfer the petition to the other court unless the petitioned court can reasonably determine whether disclosure is proper. If the petitioned court decides to transfer, it must send to the transferee court the material sought to be disclosed, if feasible, and a written evaluation of the need for continued grand-jury secrecy. The transferee court must afford those persons identified in Rule 6(e)(3)(F) a reasonable opportunity to appear and be heard.

**(4)** ***Sealed Indictment.*** The magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. The clerk must then seal the indictment, and no person may disclose the indictment's existence except as necessary to issue or execute a warrant or summons.

**(5)** ***Closed Hearing.*** Subject to any right to an open hearing in a contempt proceeding, the court must close any hearing to the extent necessary to prevent disclosure of a matter occurring before a grand jury.

**(6)** ***Sealed Records.*** Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury.

**(7)** ***Contempt.*** A knowing violation of Rule 6, or of any guidelines jointly issued by the Attorney General and the Director of National Intelligence under Rule 6, may be punished as a contempt of court.

\*       \*       \*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 12,985 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


                                        /s/ *Ari Holtzblatt*
                                        ARI HOLTZBLATT

May 14, 2024

**FILED UNDER SEAL**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of May, 2024, I caused the foregoing

notice of appeal to be served by email upon:

Rebecca G. Ross
Assistant United States Attorney
601 D Street N.W. Room #5.1517
Washington, DC 20530
Tel:  (202) 252-6937
rebecca.ross2@usdog.gov

/s/ *Ari Holtzblatt*
ARI HOLTZBLATT
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave., NW
Washington, DC 20037
Tel:  (202) 663-6000
Fax:  (202) 663-6363
ari.holtzblatt@wilmerhale.com