FILED UNDER SEAL

ORAL ARGUMENT NOT YET SCHEDULED

REDACTED BRIEF FOR APPELLEE

————————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

No. 24-5089

————————————

IN RE: SEALED CASE

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

————————————

MATTHEW M. GRAVES
United States Attorney

CHRISELLEN R. KOLB
REBECCA G. ROSS
* DANIEL J. LENERZ
DC Bar #888283905
Assistant United States Attorneys
* Counsel for Oral Argument
601 D Street, NW, Room 6.232
Washington, D.C. 20530
Daniel.Lenerz@usdoj.gov
(202) 252-6829

No. 24-mc-0007 (JEB)

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), appellee hereby states as follows:

## Parties and Amici

The parties to this appeal are appellant X Corp. and appellee the United States of America. There are no amici.

## Rulings Under Review

This is an appeal from an order by the Honorable James E. Boasberg denying X's Motion to Vacate or Modify Nondisclosure Order and Stay Compliance with Subpoena and granting the United States' Motion to Compel Compliance with Subpoena. That order is at pages 47-76 of the Sealed Joint Appendix.

## Related Cases

Appellee is unaware of any related cases.

## STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations other than those attached hereto are contained in the Addendum to the Brief for Appellant.

# TABLE OF CONTENTS

INTRODUCTION ................................................................. 1

BACKGROUND .................................................................. 4

Legal Framework ........................................................ 4

Procedural History ....................................................... 8

The Nondisclosure Order ........................................ 8

1. The Government's Application ..................... 8

2. The Court's Orders .................................. 13

The Subpoena and X's Challenge ........................... 14

The District Court's Order .................................... 19

Post-Appeal Developments .................................... 27

SUMMARY OF ARGUMENT .............................................. 28

ARGUMENT ..................................................................... 30

I. Neither § 2705(b) Nor the First Amendment Categorically Preclude Multi-Subpoena, Multi-Provider Nondisclosure Orders. ..................................................................... 30

A. X Cannot Bring a Statutory Challenge and Its Claims Lack Merit in any Event................................... 31

1. X cannot challenge the order's compliance with § 2705(b). ...................................................... 31

2. Omnibus nondisclosure orders comply with § 2705(b). ...................................................... 33

B. Omnibus Nondisclosure Orders Do Not Violate the First Amendment............................................... 42

II.   The District Court Did Not Abuse its Discretion When it
      Denied X's Request for Access to the Government's
      Application for a Nondisclosure Order.....................................45

      A.   Applicable Legal Principles and Standard of Review........45

      B.   Discussion. ..........................................................................47

III.  X's Fact-Specific Challenge to the Nondisclosure Order is
      Moot and Meritless. ..................................................................60

CONCLUSION ...............................................................................64

# Table of Authorities*

**Cases**

*330 W. Hubbard Rest. Corp. v. United States*, 203 F.3d 990
(7th Cir. 2000) ....................................................................37

*Abourezk v. Regan*, 785 F.2d 1043 (D.C. Cir. 1986) ..............46

*Am. Freedom Def. Initiative v. Washington Metro. Area Transit Auth.*,
898 F. Supp. 2d 73 (D.D.C. 2012) ......................................27

*Butterworth v. Smith*, 494 U.S. 624 (1990)......................3, 59

*Carney v. American Univ.*, 151 F.3d 1090 (D.C. Cir. 1998)..................31

*Cent. & S. Motor Freight Tariff Ass'n v. United States*, 843 F.2d 886
(6th Cir. 1988)....................................................................37

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dept. of Justice*,
746 F.3d 1082 (D.C. Cir. 2014) ..........................................51

*Clifford v. United States*, 136 F.3d 144 (D.C. Cir. 1998)................47, 56

\* *Dietz v. Bouldin*, 579 U.S. 40 (2016) ...............................3, 36

\* *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211
(1979).....................................................................35, 45, 54

*Gilmore v. Palestinian Interim Self-Government Auth.*,
843 F.3d 958 (D.C. Cir. 2016) ......................................47, 49

*Gov't of Manitoba v. Bernhardt*, 923 F.3d 173 (D.C. Cir. 2019)............53

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*In re Application for Cell Tower Records Under 18 U.S.C. 2703(d)*,
90 F. Supp. 3d 673, 677 (S.D. Tex. 2015) ............................................ 34

*In re Application of the U.S. for an Ord. Pursuant to
18 U.S.C. § 2703(d)*, 830 F. Supp. 2d 114 (E.D. Va. 2011) ................. 32

*In re Coughlin*, 33 F.4th 600 (1st Cir. 2022) .......................................... 34

*In re Grand Jury Proceedings*, No. 87-2215, 851 F.2d 860
(6th Cir. 1988) ...................................................................................... 52

*In re Grand Jury Subpoena (Miller)*, 438 F.3d 1138
(D.C. Cir. 2006) .................................................................................... 55

*In re Grand Jury Subpoena Issued to Twitter, Inc.*,
No. 3:17-mc-40-M-BN, 2017 WL 9287146
(N.D. Tex. Sept. 22, 2017) .................................................................. 32

*In re Grand Jury Subpoena to Facebook*, No. 16-MC-1300 et al.,
2016 WL 9274455 (E.D.N.Y. May 12, 2016) ..................................... 62

*In re Grand Jury Subpoena*, No. 00-1622, 223 F.3d 213
(3d Cir. 2000) ......................................................................... 50, 57, 59

*In re Grand Jury Subpoena*, No. 18-3071, 912 F.3d 623
(D.C. Cir. 2019) .................................................................................... 50

*In re John Doe Corp.*, 675 F.2d 482 (2d Cir. 1982) .............................. 58

\* *In re John Doe, Inc.*, 13 F.3d 633 (2d Cir. 1994) .................. 47, 49, 50, 58

\* *In re Motions of Down Jones & Co.*, 142 F.3d 496
(D.C. Cir. 1998) ............................................................................. 46, 48

\* *In re Sealed Case*, No. 23-5044, 77 F.4th 815
(D.C. Cir. 2023). . . . . . . . . . . . . . . . 1, 2, 23, 25, 30, 42, 44, 45, 57, 59, 63

*In re Sealed Case*, No. 81-1717, 676 F.2d 793 (D.C. Cir. 1982) ............. 55

*In re Sealed Case*, No. 86-5246, 801 F.2d 1379 (D.C. Cir. 1986)............52

*In re Sealed Case*, No. 89-5102, 877 F.2d 976 (D.C. Cir. 1989).............58

*In re Sealed Case*, No. 98-3077, 151 F.3d 1059 (D.C. Cir. 1998)......26, 47

*In re Sealed Case*, No. 99-3024, 199 F.3d 522 (D.C. Cir. 2000).............35

*In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*,
    562 F. Supp. 2d 876 (S.D. Tex. 2008) ...................................................6

*In re Special Sept. 1978 Grand Jury (II)*, 640 F.2d 49 (7th Cir. 1980)...58

*In re Subpoena 2018R00776*, 947 F.3d 148 (3d Cir. 2020) ......................5

*In re Taylor*, 567 F.2d 1183 (2d Cir. 1977) ...........................................58

*Johnson v. Interstate Mgmt. Co., LLC*, 849 F.3d 1093
    (D.C. Cir. 2017) ....................................................................................31

*Labow v. United States DOJ*, 831 F.3d 523 (D.C. Cir. 2016) ................47

*Link v. Wabash R. Co.*, 370 U.S. 626 (1962) ..........................................36

*Lopez v. DOJ*, 393 F.3d 1345, 1350 (D.C. Cir. 2005) .............................48

*Maldonado v. District of Columbia*, 61 F.4th 1004 (D.C. Cir. 2023)......60

\* *McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019) ......................46, 54, 57

*Microsoft Corp. v. United States DOJ*, 233 F. Supp. 3d 887
    (W.D. Wash. 2017) .................................................................................4

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ..............................................47

*Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) .........................................20

*Nielson v. Preap*, 586 U.S. 392 (2019)....................................................33

*People for the Ethical Treatment of Animals, Inc. v. Gittens*,
    396 F.3d 416 (D.C.Cir. 2005) ....................................... 60, 61

*SEC v. Dresser Indus., Inc.*, 628 F.2d 1368 (D.C. Cir. 1980)
    (en banc) ..................................................................... 46, 48

*Shapiro v. United States DOJ*, 40 F.4th 609 (D.C. Cir. 2022) .............. 61

*Soto-Hernandez v. Holder*, 729 F.3d 1 (1st Cir. 2013) ............................ 39

*Sweet Home Chapter of Cmtys. for a Great Or. v. Babbitt*, 1 F.3d 1
    (D.C. Cir. 1993) ....................................................................... 37

*United States v. Beaudion*, 979 F.3d 1092 (5th Cir. 2020) ..................... 31

*United States v. Grace*, No. 21-2419, 2023 WL 3243477
    (2d Cir. May 4, 2023) ........................................................ 50

*United States v. R. Enters., Inc.*, 498 U.S. 292 (1991) ............... 27, 53, 55

*United States v. Sells Eng'g*, 463 U.S. 418 (1983) ................................ 54

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ................................ 50

*Williams-Yulee v. Florida Bar*, 575 U.S. 433 (2015) ................. 25, 42, 44

## Other References

\* 1 U.S.C. § 1 .................................................................................. 21, 34

18 U.S.C. § 12 ..................................................................................... 4

18 U.S.C. § 2510(15) ......................................................................... 11

18 U.S.C. § 2701 ................................................................................. 4

18 U.S.C. § 2703 ................................................................................. 4

18 U.S.C. § 2703(b) .................................................................... 4, 5, 21

18 U.S.C. § 2703(b)(1) ........................................................................ 4

18 U.S.C. § 2703(b)(1)(B)(i) ............................................................... 4

18 U.S.C. § 2703(c) ....................................................................... 4, 48

18 U.S.C. § 2703(c)(2) ................................................................... 5, 11

18 U.S.C. § 2703(c)(3) ........................................................................ 4

18 U.S.C. § 2703(e) ............................................................................. 5

\* 18 U.S.C. § 2705(b) .................. 1, 6, 7, 21, 27-28, 30-33, 36-38, 40, 41, 61

18 U.S.C. § 2708 ............................................................................... 31

18 U.S.C. § 2711(2) ........................................................................... 11

\* Fed. R. Crim P. 6(e)(2) ................................................................... 5, 52

Fed. R. Crim P. 6(e)(2)(B) ............................................................... 35

Fed. R. App. P. 4(a)(1)(B) ............................................................... 27

Fed. R. Civ. P. 61 ........................................................................... 49

Justice Manual § 9-13.700 ............................................................. 7

Justice Manual § 9-13.700(1) ........................................................ 7

Justice Manual § 9-13.700(3) ........................................................ 8

Justice Manual § 9-13.700(5) ........................................................ 7

Justice Manual § 9-13.700(8) ........................................................ 7

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012) ................................................................ 32

*Merriam-Webster's Collegiate Dictionary* 1294 (11th ed. 2005) ............. 33

# GLOSSARY

| | |
|---|---|
| Br. | Brief for Appellant X Corp. |
| JA | Sealed Joint Appendix |
| NDO | Nondisclosure order |
| SA | Sealed Supplemental Appendix |
| SSA | Ex Parte Sealed Supplemental Appendix |
| X | X Corp. |

# STATEMENT OF JURISDICTION

This Court has jurisdiction to review the district court's order denying X's motion to vacate or modify the nondisclosure order under the collateral-order doctrine. *See In re Sealed Case*, No. 23-5044, 77 F.4th 815, 824 (D.C. Cir. 2023).[1] Although the nondisclosure order was vacated during the pendency of this appeal, the government believes that X's challenges to (1) the "omnibus" nature of that order and (2) the district court's denial of X's request to disclose ex parte information are reviewable under the capable of repetition yet evading review exception to mootness. *See id.* at 826-28. It is sufficiently likely that the government will rely on multiple-subpoena, multiple-provider nondisclosure orders in the future, as it has in the past (Sealed Supplemental Appendix (SA) 67 n.1). *See In re Sealed Case*, No. 23-5044, 77 F.4th at 827 (finding X's First Amendment challenge to nondisclosure order capable of repetition). Likewise, the government expects that it will seek to rely on ex parte evidence when defending against challenges to § 2705(b) nondisclosure orders, and thus that "the legal wrong complained of . . . is reasonably

---

[1] To distinguish the many cases with the same name, the government includes the case number in the citation.

likely to recur." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324 (D.C. Cir. 2009). Both of these challenges evade review because the nondisclosure order's duration was one year (Sealed Joint Appendix (JA) 11). *See In re Sealed Case*, No. 23-5044, 77 F.4th at 827 ("We have no trouble holding that a challenge to a nondisclosure order also 'evades review.'").

As discussed below (at 61-62), this Court lacks jurisdiction to consider X's fact-specific challenges to the nondisclosure order because they are moot. *See People for the Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 424 (D.C. Cir. 2005).

# Issues Presented

I.    Whether, under 18 U.S.C. § 2705(b) and the First Amendment, the district court may enter a nondisclosure order applicable to multiple subpoenas issued to multiple service providers as part of an investigation involving the same specific, narrow facts and circumstances set forth in the order application.

II.    Whether the district court abused its discretion when it declined X's request for access to the evidence underlying the government's application for a nondisclosure order given the compelling interest in preserving grand jury secrecy in an ongoing investigation.

III.    Whether X's fact-specific challenge to the nondisclosure order is moot and, if not, whether the district court properly found that it complied with § 2705(b) and the First Amendment on these facts.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————————

No. 24-5089

————————————————

IN RE: SEALED CASE

————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

————————————————

EX PARTE BRIEF FOR APPELLEE

————————————————

# INTRODUCTION

As the district court correctly recognized, X Corp.'s challenge to the nondisclosure order (NDO) in this case regurgitates many of the same claims rejected by this Court in *In re Sealed Case*, No. 23-5044, 77 F.4th 815 (D.C. Cir. 2w023) (JA64). Just last year, this Court rejected X's First Amendment challenge to a nondisclosure order entered under 18 U.S.C. § 2705(b), finding that the government's interests in "preserving the integrity and maintaining the secrecy of its ongoing criminal investigation" were "unquestionably compelling," and that the order was sufficiently narrowly tailored because it was "limited in duration" and X

"remained free to raise general concerns about warrants or nondisclosure orders[.]" *In re Sealed Case*, No. 23-5044, 77 F.4th at 830-31. The Court reached that conclusion notwithstanding the fact that the Special Counsel's investigation was public knowledge, "some information about grand jury subpoenas or visitors to the federal courthouse was public," and the nondisclosure order "would preclude . . . former President [Trump] from asserting executive privilege to shield communications made using his Twitter account." *Id.* at 821, 823, 831. As in *Sealed Case,* the nondisclosure order in this case validly protected the compelling interest in grand jury secrecy notwithstanding the alleged whistleblower status of the subscribers. Although the order here differed from the one in *Sealed Case* insofar as it applied to multiple grand jury subpoenas that met specifically delineated criteria, the district court correctly concluded that, notwithstanding this difference, "the NDO withstands strict scrutiny because it was a narrowly tailored means of achieving compelling government interests" (JA71).

The district court likewise correctly concluded that the Stored Communications Act does not preclude the issuance of an "omnibus" nondisclosure order. Nothing in § 2705(b)'s plain language prohibits such

an order. And the legal backdrop against which the statute was enacted supports the court's decision to issue a single order that prohibits disclosure of multiple grand jury subpoenas issued to multiple service providers in connection with the same investigation. The Supreme Court "consistently ha[s] recognized that the proper functioning of our grand jury system depends upon the secrecy of the grand jury proceedings." *Butterworth v. Smith*, 494 U.S. 624, 630 (1990) (quotation marks omitted). Likewise, the Court "has long recognized that a district court possesses inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quotation marks omitted). The court thus properly issued a nondisclosure order that applied to multiple grand jury subpoenas falling within a "specific category" after "conduct[ing] a case- and fact-specific analysis" and concluding that "disclosing any legal process meeting those narrow criteria will cause specific harm" (JA60).

# BACKGROUND

## Legal Framework

The Stored Communications Act, 18 U.S.C. §§ 2701–12, establishes procedures for law enforcement to obtain information from electronic service providers. As relevant here, § 2703 sets forth procedures that distinguish between the contents of communications, § 2703(b), and non-content information, § 2703(c). "Content includes items such as emails and documents, while non-content data includes things like email addresses and IP addresses." *Microsoft Corp. v. United States DOJ*, 233 F. Supp. 3d 887, 894 (W.D. Wash. 2017).

If the government uses a grand jury subpoena to obtain the contents of communications, it must give prior notice to the subscriber or customer, § 2703(b)(1)(B)(i), although notice may be delayed, §§ 2703(b)(1), 2705(a). If, as here, the government uses a grand jury subpoena to obtain non-content information, it is not required to provide notice to the subscriber or customer. § 2703(c)(3). However, the service provider is required to produce only the subscriber's or customer's:

(A) name;

(B) address;

(C) local and long distance telephone connection records, or records of session times and durations;

(D) length of service (including start date) and types of service utilized;

(E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and

(F) means and source of payment for such service (including any credit card or bank account number)[.]

§ 2703(c)(2). When a provider produces this information in response to a subpoena, it is immunized from liability for the disclosure. § 2703(e).

A service provider that supplies information pursuant to a grand jury subpoena "is a grand jury witness and is not subject to the general secrecy obligation imposed by the Federal Rule of Criminal Procedure 6(e)(2)." *In re Subpoena 2018R00776*, 947 F.3d 148, 152 (3d Cir. 2020). However, § 2705(b) of the Act "authorizes courts to prohibit a service provider from notifying anyone of its receipt of legal process in appropriate circumstances." *Id.* It provides:

> **Preclusion of notice to subject of governmental access.**
> A governmental entity . . . may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe

that notification of the existence of the warrant, subpoena, or court order will result in—

> (1) endangering the life or physical safety of an individual;
>
> (2) flight from prosecution;
>
> (3) destruction of or tampering with evidence;
>
> (4) intimidation of potential witnesses; or
>
> (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

§ 2705(b). "Once the government makes the required showing under § 2705(b), the court is required to issue the non-disclosure order." *In re Application for Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(b) for Grand Jury Subpoena #GJ2014031422765*, 41 F. Supp. 3d 1, 5 (D.D.C. 2014). The order's duration, however, "is at the discretion of the issuing judge." *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 880 (S.D. Tex. 2008).

The Department of Justice has issued guidance to prosecutors seeking nondisclosure orders under § 2705(b). *See* Deputy Att'y Gen. Lisa Monaco, U.S. Dep't of Justice, Supplemental Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b) (May 27, 2022), *https://perma.cc/AYP6-F9H7*; Deputy Att'y Gen. Rod J.

Rosenstein, U.S. Dep't of Justice, Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b) (Oct. 19, 2017), *https://perma.cc/MN34-QMNW*. Under Department policy, prosecutors "must conduct an individualized, meaningful, and case-specific assessment regarding the need for protection from disclosure prior to seeking a § 2705(b) order and only seek an order when circumstances require." Justice Manual § 9-13.700(1), *https://www.justice.gov/jm/jm-9-13000-obtaining-evidence#9-13.700*. Each order "should extend only as long as necessary to satisfy the government's interests." § 9-13.700. "Barring exceptional circumstances, prosecutors filing § 2705(b) applications may only seek to delay notice for one year or less." § 9-13.700(5). And "[a]ll sections and offices must establish a protocol by which they routinely review the need for § 2705(b) orders in an ongoing investigation or case as part of an office's regular case review." § 9-13.700(8).

The Department's policy further provides that "[p]rosecutors may seek a single protective order that covers multiple grand jury subpoenas issued as part of the same investigation, or a single protective order that covers other sets of nearly identical legal process in a discrete

investigation." § 9-13.700(3). However, "[a] single protective order for multiple items of process should be sought only if the facts justifying protection from disclosure are the same for all items of process covered by the order." *Id.*

## Procedural History

### *The Nondisclosure Order*

### 1.    The Government's Application

On December 11, 2023, the government applied for " ███████ ████████████████████████████████████ " under § 2705(b) (Ex Parte Sealed Supplemental Appendix (SSA) 1). The application explained that the government was investigating ████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████





[REDACTED]

[REDACTED] [2]

Although the government's requested nondisclosure order would apply to multiple grand jury subpoenas, the government's application explained that [REDACTED] [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] . [REDACTED]

[REDACTED]

---

[2] The government later withdrew its "flight from prosecution" rationale (JA51).

FILED UNDER SEAL



12

███████████████████████████████████

██████████████████████

## 2.    The Court's Orders

A magistrate judge granted the government's application for a nondisclosure order. The court did so in two parts. First, it entered an order setting forth the conditions under which the nondisclosure order would cover grand jury subpoenas issued by the government (Sealed Supplemental Appendix (SA) 1-2). Consistent with the government's application, the order stated that "[t]he government shall be permitted to serve the omnibus [nondisclosure] Order, attached to a subpoena, only under the . . . conditions" identified above (at 11) (SA1). The court found "reasonable grounds to believe that disclosure of such subpoenas will result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, and serious jeopardy to the investigation" (*id*.). It also found "an adequate basis for issuing the proposed order (the 'omnibus Order'), rather than require a separate application for each subpoena that will be issued in this case" (*id*.).

Second, the court signed an "Order to Provider" that the government could serve with grand jury subpoenas issued in compliance

with the first order (JA11). That order commanded that "PROVIDER and its employees shall not disclose the existence of the attached subpoena to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) prior to one year from the date on which the Court signed this Order, unless the period of non-disclosure is later modified by the Court" (*id.*).

## *The Subpoena and X's Challenge*

On January 5, 2024—less than a month after entry of the nondisclosure order—the government served X with (1) a grand jury subpoena seeking non-content information for ████████████ Twitter accounts and (2) the nondisclosure order (JA3-11).

On January 24, X moved Chief Judge James E. Boasberg to vacate or modify the nondisclosure order (motion to vacate) (SA3-37). X argued that the court should vacate or modify the nondisclosure order for two reasons: the government could not have made the showing required under § 2705(b) to obtain a nondisclosure order and, even if it had, the order violated the First Amendment (SA26-34).

In support of the first argument, X asserted that "the government cannot show that disclosure of the Subpoena will result in any of the

enumerated harms" in § 2705(b)(1)-(5) "because the investigation of at least one of the targeted users is already known to the public" (SA28). Before the nondisclosure order issued, ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ (*id.*). X also argued that, because ████████████████████

████████████████████████████████████████ they were unlikely "to flee prosecution, tamper with evidence, intimidate potential witnesses, or otherwise seriously jeopardize any investigation" (SA28-29). And X asserted that, "[t]o the extent that it is a generic order being used by the government for a variety of grand jury subpoenas," the nondisclosure order "raises questions of whether the government has presented specific and articulable facts that meet the statutory requirements that disclosure of this specific Subpoena to X would result in one of the 2705(b) enumerated harms" (SA30).

Separately, X argued that the nondisclosure order violated the First Amendment because it was not justified by a compelling governmental interest and was not narrowly tailored to further that interest (SA30-34).

According to X, the nondisclosure order was not justified by a compelling interest because "facts about the investigation" had "already become public," and because there was no indication that the issuing judge "considered whether the target users of the investigation were ███████ ████████████████████████████████████████████████████" (SA31-32). And X argued that the nondisclosure order was not narrowly tailored because (1) it applied for a year and (2) did not allow X to inform ████████ ██████████ about the subpoena "precisely when that information is most valuable to them—███████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████" (SA34).

Finally, X asked the court to order the government to produce its ex parte application for a nondisclosure order (SA35-36). X urged that "[t]he Court should order disclosure here because X has the right to respond to the government's arguments purporting to justify a restraint on X's speech" (SA36). X stated that, "should the Court deem it necessary, X would agree to limit disclosure to counsel only" (*id.*).

The government opposed X's motion and moved to compel compliance with the subpoena (JA14-34). Among other things, the

government proffered additional evidence supporting the nondisclosure order that it had not put in its initial application (SSA16-17). It explained that ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

In its reply brief, X argued that "[n]either the [Stored Communications Act] nor the First Amendment authorize or permit an 'omnibus' disclosure order" (SA45). X asserted that "Section 2705(b)'s text requires the government to tether the nondisclosure order—and the factual showing offered to justify it—to a particular piece of legal process" (*id.*). X urged that this conclusion flows from "[t]he plain text of Section 2705(b)," which allows the court to issue "'an order . . . not to notify any

other person of the existence of *the* warrant, subpoena, or court order'" (SA46 (quoting § 2705(b)). "The statute's use of the definite article ('the') fatally undermines the government's claim that it needed to show only that 'disclosure of *a* subpoena' would cause a statutory harm" (*id.*). Separately, X argued that "the First Amendment likewise requires the government to proffer concrete evidence directly linking any purported harms of disclosure to the speech that the government seeks to restrict" (SA45-46). X also expanded its due process argument, asserting that it "seeks attorneys-eyes-only access to the evidence on which the government itself chose to rely in opposing X's motion" (SA51). X faulted the government for failing to submit "evidence that X's counsel—officers of the court—in a sealed proceeding cannot be trusted to keep this information confidential or that disclosing the information to X's counsel alone would harm the investigation" (SA51).

In a surreply, the government argued that, because X had raised it for the first time in its reply brief, X had "waived any claim that omnibus NDOs issued pursuant to Section 2705(b) are overbroad and not permitted by the SCA" (SA65). The government also addressed X's argument on the merits (SA66-71). Nothing in § 2705(b) "require[d] that

an NDO apply only to a single account or piece of process at a time" (SA66). And "an omnibus NDO covering multiple potential subject accounts can be appropriately tailored to the scope and nature of the government's compelling interest" as required by the First Amendment, "and was so here" (SA71).

## *The District Court's Order*

In an opinion issued on March 29, 2024, Chief Judge Boasberg denied X's motion to vacate and granted the government's motion to compel compliance with the subpoena (JA48-76).

First, the court concluded that the government's application had established that notification to ███████████████ would result in a requisite harm under § 2705(b) (JA54). The application, the court found, made "a more-than-adequate showing . . . that disclosure of subpoenas meeting the specified criteria will result in destruction of or tampering with evidence, intimidation of potential witnesses, and serious jeopardy to the investigation" (JA55). ████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████ (*id.*). Neither the grand jury's

investigation nor the subpoena it had issued to aid that investigation were "known to ███████████████" (*id.*). And while the government's motion to compel offered additional evidence about the harms stemming from disclosure, the court would "not infer from the fact that the Government has bolstered its evidence that its initial offering was insufficient" (JA56).

The court separately rejected X's argument that § 2705(b) prohibits omnibus nondisclosure orders (JA56). The court did not find waiver (*id.*), but rejected X's position on the merits, finding that "this omnibus NDO comports with th[e] statute" (JA57). The court "le[ft] questions about other omnibus NDOs for another day" (*id.*).

Addressing X's plain-language argument "focusing on the word 'the' in the second sentence" of § 2705(b), the district court determined that X "asks too much of three letters" (JA57-58). The court recognized that "'the' is 'a function word . . . indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context'" (JA58 (quoting *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019)). But "Section 2705(b) itself specifies in the immediately preceding sentence 'the warrant, subpoena, or court order' to which it is referring" in the second

sentence: "The 'warrant, subpoena, or court order' specified in the first sentence of the statute — that is, '<u>a</u>' warrant, subpoena, or court order for which the Government is seeking an NDO" (*id.* (quoting § 2705(b)). And the Dictionary Act, 1 U.S.C. § 1, establishes that "the term 'a' in '<u>a</u> warrant, subpoena, or court order'" includes multiple warrants, subpoenas, or court orders (JA59). *See* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise[,] . . . words importing the singular include and apply to several persons, parties, or things[.]"). The court thus concluded that § 2705(b)'s use of "the" "does not mandate that NDO applications seek a subpoena-specific, provider-specific NDO" (JA59).

The court also rejected X's argument that a court cannot assess whether a subpoena "will result in" one of the harms enumerated in § 2705(b) "unless the United States identifies the single, specific subpoena to be covered by the requested NDO and explains why disclosing that particular subpoena will cause specific harm" (JA59). In its application, the government identified "a specific category of providers" and "a specific category of subpoenas (those that are issued as part of the investigation into ██████████████ within one year of the

NDO's issuance date, seek only basic subscriber information, and share a factual justification for nondisclosure)" (JA59-60). The government also explained "why disclosing any legal process meeting those narrow criteria will cause specific harm, considering the targets' backgrounds and the nature of the offenses for which they are under investigation" (JA60). The issuing magistrate judge, the court found, had "sufficient facts to permit her to conduct a case- and fact-specific analysis limited to this investigation and subpoenas meeting the aforementioned criteria" (*id.*).

Ultimately, the court declared, "nothing in the plain text of Section 2705(b) creates X's imagined categorical prohibition on omnibus NDOs" (JA60). And to read such a ban into the statute "would be to exalt form over substance" (*id.*). X had failed "to explain what would be gained by requiring dozens of separate, virtually identical applications where, as here, the material underlying facts are the same — a requirement that would surely be wasteful, unnecessary, burdensome for the court, and delay the investigation" (*id.* (cleaned up)). The court thus "conclude[d] that the challenged NDO comports with the statute — notwithstanding its omnibus nature — because the United States adequately showed

under Section 2705(b) that nondisclosure was warranted for grand-jury subpoenas meeting its narrowly defined criteria" (JA61).

The district court also rejected X's argument that the nondisclosure order violated the First Amendment (JA61-71). As with X's § 2705(b) argument, the court declined to address whether "the First Amendment prohibits all omnibus NDOs," but instead "assess[ed] only whether this NDO passes muster" (JA64). In that regard, X "mostly regurgitate[d] the arguments that it made," and that this Court rejected, in *Sealed Case*, No. 23-5044 (JA64). However, because this Court "upheld only the particular NDO at issue" and did not "foreclos[e] First Amendment attacks on all NDOs," the district court "analyzed the challenged NDO afresh" (*id.*).

Addressing the compelling governmental interest in the nondisclosure order, the court found that the goals of "preserving the integrity and the secrecy of an ongoing grand-jury investigation" are "paramount" and "'unquestionably compelling'" (JA64 (quoting *In re Sealed Case*, No. 23-5044, 77 F.4th at 830)). Although the government was not "target[ing] election interference in this case," "its interests are nevertheless heightened . . . [given] the targets' backgrounds and the

nature of the offenses for which they are under investigation" (JA65). And notwithstanding X's desire to inform ▮▮▮▮▮▮▮▮▮▮ about the subpoena "so that they can determine whether to ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮" the unresolved question whether the men are entitled to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "is irrelevant to the question of whether the Government has a compelling interest in maintaining the NDO" (JA65-66). "[W]hat matters for purposes of the First Amendment is whether the government has established that the NDO serves a compelling government interest in keeping the subpoena confidential" (JA66-67 (cleaned up)). For the reasons the court had previously explained, "it has" (JA67).

The court further found that the omnibus nature of the nondisclosure order did not defeat the government's ability to establish a compelling interest (JA67). The government had "offered sufficient facts for the magistrate judge to determine that an NDO was warranted" (*id.*). And it had established "that disclosure of any covered subpoenas, regardless of the exact subscriber information sought or service provider directed to produce that information, would undercut the integrity and secrecy of an ongoing grand-jury investigation" (*id.*).

The court also determined that the nondisclosure order was narrowly tailored (JA68-71). The order prohibited X "from disclosing only the existence of the subpoena, which is, '[b]y any measure, . . . a narrow slice of speech'" (JA68 (quoting *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 452 (2015)). Moreover, the only speech the order regulates "is 'information that [X] obtained only by virtue of its involvement in the government's investigation,' which courts have suggested 'is entitled to less protection than information a speaker possesses independently'" (*id.* (quoting *In re Sealed Case*, No. 23-5044, 77 F.4th at 831)). And the order did not "apply indefinitely; rather, its duration is limited to one year" (JA69).

The court rejected X's argument that a less-restrictive means of furthering the government's interests would be an order allowing X to disclose the subpoena only to ██████████████, noting that this Court had considered such an alternative "a 'nonstarter[]' because it 'would not have maintained the confidentiality of the criminal investigation and therefore risked jeopardizing it'" (JA69 (quoting *In re Sealed Case*, No. 23-5044, 77 F.4th at 831)). The court likewise rejected X's argument "that the omnibus nature of the NDO undermines its

narrow tailoring" (JA70). X had "cite[d] no cases suggesting that a speech restriction must enumerate the persons whose speech it restricts in order to pass muster under the narrow-tailoring prong of strict scrutiny. In reality, most narrowly tailored speech restrictions — especially those contained in statutes or regulations — do no such thing." (*Id.*)

Finally, the district court denied X's request for access to the government's application for a nondisclosure order (JA71-75). Ex parte submissions may be used, the court explained, "'where a compelling interest exists,' and preserving the 'ongoing interest in grand jury secrecy' counts" as such an interest (JA72 (quoting *In re Sealed Case*, No. 98-3077, 151 F.3d 1059, 1075 (D.C. Cir. 1998)). The court found "little doubt that *in camera* review of the Government's *ex parte* submission is the most appropriate — perhaps the only — means of protecting grand-jury secrecy" (*id.*). This method was "nothing new": X had "cite[d] no case — from this district or elsewhere — in which a court has compelled the Government to disclose an *ex parte* application for an order like the NDO here" (JA73).

The court rejected X's argument that disclosure of the government's application was necessary so that X could "analyze whether its less-

restrictive alternatives would adequately address the government's concerns" for purposes applying strict scrutiny under the First Amendment (JA74). "This line of reasoning," the court found, "confuses the role of X with that of the court" (*id.*). "When strict scrutiny applies to a speech restriction under the First Amendment, 'the burden is on the government to prove that the restriction is the least restrictive alternative to achieve its compelling interest,' and the court — not the opposing party — assesses whether it has done so" (*id.* (quoting *Am. Freedom Def. Initiative v. Washington Metro. Area Transit Auth.*, 898 F. Supp. 2d 73, 81 (D.D.C. 2012)). "At the end of the day," the court explained, "although it is entirely understandable that X would prefer to review the full NDO Application itself and then file a supplemental brief, the 'indispensable secrecy of grand jury proceedings' counsels otherwise" (JA75 (quoting *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991)).

X timely appealed (JA77). *See* Fed. R. App. P. 4(a)(1)(B).

## Post-Appeal Developments

In its application for a nondisclosure order, the government stated that, ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

(SSA11). Consistent with that representation, on June 13, 2024, the government moved to vacate the nondisclosure order. On June 14, a magistrate judge vacated the nondisclosure order and required the government to "provide notice of this order to each such provider of electronic communications or remote computer service . . . to whom the . . . nondisclosure order w[as] previously provided" (SA78). The government thereafter notified X that the nondisclosure order had been vacated.

## SUMMARY OF ARGUMENT

The Stored Communication Act provides no statutory cause of action allowing an electronic service provider to challenge a nondisclosure order's compliance with § 2705(b). But even if it did, nothing in that section precludes a court from issuing a nondisclosure order that applies to multiple subpoenas issued to multiple providers in connection with the same underlying investigation. The statute provides the same legal protections for subscribers and providers regardless of whether a court issues an omnibus nondisclosure order or a series of

identical nondisclosure orders. Before any nondisclosure order, a court must find that notification would result in a statutorily enumerated harm. And a nondisclosure order can include sufficiently specific criteria to ensure that the order applies only when notice would result in a statutory harm whether at the time the court enters the order or days, weeks, or even months later.

Such an "omnibus" nondisclosure order also complies with the First Amendment. The government's interest in maintaining the secrecy of an ongoing criminal investigation is compelling regardless of the omnibus nature of a nondisclosure order. And such an order is narrowly tailored because it is limited in duration and prevents each recipient from disclosing only the existence of an item of legal process, a narrow slice of speech. For an omnibus nondisclosure order, like any other, each recipient remains free to speak publicly about anything else. And the order's form has no adverse impact on the ability of the recipient to challenge its constitutionality.

The district court did not abuse its discretion when it declined X's request for access to the evidence supporting the government's application for a nondisclosure order. This and other courts have

regularly approved the use of ex parte information when necessary to ensure grand jury secrecy. Here, the district court correctly determined that ex parte review of that evidence was necessary to preserve the secrecy of an ongoing grand jury investigation.

X's fact-specific challenge to the nondisclosure order in this case is moot now that the order has been vacated. It is also meritless. In that regard, this Court's recent decision in *In re Sealed Case*, No. 23-5044, is controlling: there is no meaningful difference between the nondisclosure order at issue here and the one at issue in *Sealed Case*.

## ARGUMENT

### I.    Neither § 2705(b) Nor the First Amendment Categorically Preclude Multi-Subpoena, Multi-Provider Nondisclosure Orders.

X argues that neither § 2705(b) nor the First Amendment allows multi-subpoena, multi-provider nondisclosure orders of the kind issued in this case (Brief for Appellant X Corp. (Br.) at 20-36). This argument fails.

### A. X Cannot Bring a Statutory Challenge and Its Claims Lack Merit in any Event.

#### 1. X cannot challenge the order's compliance with § 2705(b).

The Stored Communication Act's text and structure demonstrate that a service provider such as X cannot raise a statutory challenge to a nondisclosure order's compliance with § 2705(b).[3] *See Johnson v. Interstate Mgmt. Co., LLC*, 849 F.3d 1093, 1097 (D.C. Cir. 2017) ("If the text of a statute does not provide a cause of action, there ordinarily is no cause of action."). The Act explicitly states that "[t]he remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter." 18 U.S.C. § 2708. Just as suppression is not an available remedy for a claimed violation of the Act, *United States v. Beaudion*, 979 F.3d 1092, 1101 (5th Cir. 2020), and account holders cannot obtain nonconstitutional review of an order issued under § 2703(d), *In re Application of the U.S. for an Ord. Pursuant to 18 U.S.C. § 2703(d)*, 830 F. Supp. 2d 114, 128-29 (E.D.

---

[3] Although the government did not raise this argument before the district court, this Court "can affirm a district court judgment on any basis supported by the record." *Carney v. American Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998).

Va. 2011), so too is X foreclosed from advancing a statutory claim that § 2705(b) does not permit the order issued here. That Congress afforded service providers grounds to move to quash an order "if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider," § 2703 (d), suggests under the negative-implication canon that Congress did not intend to permit service providers to challenge a court's order issuing a nondisclosure order under § 2705(b). *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012) (under the negative-implication canon, the "expression of one thing implies the exclusion of others"). And X identifies no statutory basis permitting it to challenge a nondisclosure order under § 2705(b). Indeed, other than a single unpublished opinion by a magistrate judge, *In re Grand Jury Subpoena Issued to Twitter, Inc.*, No. 3:17-mc-40-M-BN, 2017 WL 9287146 (N.D. Tex. Sept. 22, 2017), the government is unaware of any case in which a court has invalidated a nondisclosure order based on its noncompliance with § 2705(b). It follows that X has no grounds to litigate the district court's conclusion that the nondisclosure order comported with § 2705(b).

## 2. Omnibus nondisclosure orders comply with § 2705(b).

X's statutory challenge also fails on the merits. The district court correctly held that the multi-subpoena, multi-provider nondisclosure order in this case complied with § 2705(b) (JA56-61, 67, 70-71). That section provides:

> A governmental entity . . . may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in [an enumerated harm.]

§ 2705(b).

Application of § 2705(b) is straightforward when a single item of legal process is directed at a single electronic service provider: the court must find reason to believe that notification of "the" item will result in a statutory harm. *See generally Nielson v. Preap*, 586 U.S. 392, 408 (2019) ("'the' is 'a function word . . . indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context'") (quoting *Merriam-Webster's Collegiate Dictionary* 1294 (11th ed. 2005)).

The fact that the statute is written in the singular, however, does not limit its application to single-subpoena, single-provider nondisclosure orders. Rather, the Dictionary Act requires that, "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . words importing the singular include and apply to several persons, parties, or things[.]" 1 U.S.C. § 1. "Congress [thus] has instructed us not to fret over whether a statute uses a word in its singular or plural form." *In re Coughlin*, 33 F.4th 600, 611 (1st Cir. 2022). Instead, "the default rule of interpretation is to include both singular and plural, absent a contrary indication in the statute." *In re Application for Cell Tower Records Under 18 U.S.C. 2703(d)*, 90 F. Supp. 3d 673, 677 (S.D. Tex. 2015).

Applying that default rule here, § 2705(b) allows a court to enter a nondisclosure order that covers multiple items of legal process directed at a single electronic service provider. It allows for an order that covers a single item of legal process directed at multiple service providers. And it allows for what occurred here: a nondisclosure order that covers multiple subpoenas directed at multiple service providers. Under each scenario, the statute operates in the same way. The court must find "reason to

believe that notification of the existence of the . . . subpoena[(s)]" will result in an enumerated harm. § 2705(b). If it does, it must order each electronic service provider "to whom . . . a subpoena . . . is directed . . . not to notify any other person of the existence of the . . . subpoena[.]" *Id.*

Nothing in the statutory context demands a different conclusion. Section 2705(b) allows the government to maintain the secrecy of grand jury investigations, which is essential to "the proper functioning of our grand jury system[.]" *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). Indeed, the potential harms justifying a nondisclosure order under § 2705(b)(1)-(5) mirror the "distinct interests served by safeguarding the confidentiality of grand jury proceedings" recognized by the Supreme Court in *Douglas Oil*, 441 U.S. at 219, such as protecting witness safety, avoiding flight from prosecution, preventing intimidation of witnesses, and the like. Based on those concerns, Congress enacted a broad requirement of secrecy for *all* "matter[s] occurring before the grand jury[.]" Fed. R. Crim. P. 6(e)(2). Given the "strong presumption of secrecy" for "grand jury proceedings and related matters[,]" *In re Sealed Case*, No. 99-3024, 199 F.3d 522, 526 (D.C. Cir. 2000), there is no reason to think that Congress intended to preclude judges from issuing orders that apply

to multiple items of legal process where the risks stemming from disclosure apply equally to each item.

Such an approach would also intrude upon courts' "inherent powers . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quotation marks omitted). As the district court here recognized, "[o]mnibus NDOs advance this Court's interest in the efficient and orderly administration of justice" (JA60 (quotation marks omitted)). And nothing "would be gained by requiring dozens of separate, virtually identical applications where, as here, the material underlying facts are the same — a requirement that would surely be wasteful, unnecessary, burdensome for the court, and delay the investigation" (*id.* (cleaned up)). Were Congress to have intended § 2705(b) to incorporate such an anomalous requirement, one would expect "a much clearer expression of purpose than [§ 2705(b)] provides[.]" *Link v. Wabash R. Co.*, 370 U.S. 626, 631-32 (1962)). But "nothing in the plain text of Section 2705(b) creates X's imagined categorical prohibition on omnibus NDOs" (JA60).

X ignores the Dictionary Act entirely when insisting that § 2705(b) only allows single-subpoena nondisclosure orders (or, perhaps, orders

covering "multiple subpoenas . . . [that are] specified at the time the government applies for the order" (Br. at 25)). Instead, X focuses on Congress' use of "the definite article" (*id.* at 21), urging that, because § 2705(b)'s second sentence refers to "the warrant, subpoena, or court order," the statute applies only "to concrete legal process that exists and 'is directed' at a provider" (*id.* at 24).

This argument "impart[s] inappropriate significance to the use of the singular versus the plural." *Sweet Home Chapter of Cmtys. for a Great Or. v. Babbitt*, 1 F.3d 1, 6 (D.C. Cir. 1993) (citing Dictionary Act). Unless context indicates otherwise, "[u]se of the singular is not meaningful in federal statutes." *330 W. Hubbard Rest. Corp. v. United States*, 203 F.3d 990, 995 (7th Cir. 2000). Indeed, X "is arguing that Congress, by stating its proposition in the singular, necessarily excluded the plural. That argument violates a basic principle of statutory interpretation — that the singular includes the plural and the plural includes the singular." *Cent. & S. Motor Freight Tariff Ass'n v. United States*, 843 F.2d 886, 894 (6th Cir. 1988). So understood, multi-provider, multi-subpoena nondisclosure orders fit comfortably within § 2705(b). Regardless of the number of subpoenas or providers at issue, the court may only issue a nondisclosure

order "commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed . . . not to notify any other person of the existence of the warrant, subpoena, or court order" if it has "reason to believe that notification of the existence of th[ose particular] warrant[s], subpoena[s], or court order[s]" will result in an enumerated harm. § 2705(b).

There is likewise no merit to X's suggestion that the statute requires each item of legal process to have been drafted and presented to the court at the time it issues the nondisclosure order (see Br. at 20, 25). The statute's description of "a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed," § 2705(b), does not "refer[] to concrete legal process that exists and 'is directed' at a provider" (Br. at 24); instead, it defines the entities whom the court can command "not to notify any other person of the existence of the warrant, subpoena, or court order." § 2705(b). A subpoena "is directed" at a service provider whether it exists at the time the court issues its nondisclosure order or is instead issued a week later and "is directed" at the provider then.

Contrary to X's arguments (at 25-30), reading § 2705(b) to incorporate the plural as the Dictionary Act instructs does not "render[ the] statute illogical or otherwise impracticable." *Soto-Hernandez v. Holder*, 729 F.3d 1, 5 (1st Cir. 2013). A multi-provider, multi-subpoena nondisclosure order does not, as X asserts, "permit[ ] the government"— rather than the judge—"to determine whether a provider should be prohibited from informing anyone about legal process" (Br. at 25). It is the judge who determines whether notification of the existence of legal process meeting certain specific criteria will result in a statutorily enumerated harm; the government merely evaluates whether the legal process meets the criteria defined by the judge. The order in this case is illustrative: it permitted the government "to serve the omnibus Order, attached to a subpoena, only under the following conditions" delineated by the magistrate judge (SA1-2). The judge—not the government—found "reasonable grounds to believe that disclosure of such subpoenas will result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, and serious jeopardy to the investigation" (SA1). Constrained by the order's express limitations, the

government was required to determine whether a given subpoena met those conditions.

X is likewise incorrect that a "court cannot determine whether statutory harm 'will result,' as Section 2705(b) requires, at the time it issues an omnibus order" (Br. at 26). If the government's application establishes that notification today will result in a statutory harm, a court could readily conclude that the same showing establishes that notification tomorrow, next week, or next month would result in the same harm. That is particularly true for grand jury subpoenas like those at issue here, where the only difference is the particular account identifiers, which are immaterial to the § 2705(b) assessment. And insofar as the potential harms "may become stale months later, for example if . . . details of the government's investigation become public" (Br. at 26), the court's order can account for that. Here, for example, the order required that "[t]he facts proffered in the government's application for this omnibus Order of non-disclosure must apply to each and every subpoena to which the Order is attached" (SA2). One of those proffered facts was that neither ▮▮▮▮▮▮▮▮▮▮▮▮ was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SSA4). Contrary to X's argument (at

27), this restriction "meaningfully narrow[ed] the category of subpoenas" to which the nondisclosure order applied. Finally, as this case illustrates, the omnibus nature of the order does not impair the provider's ability to challenge its validity.

The fact that other statutes allow the government to maintain investigative secrecy without judicial involvement (Br. at 28-30) is irrelevant to the question whether § 2705(b) allows a court to issue a multi-subpoena, multi-provider nondisclosure order. Regardless of the order's scope, "a neutral magistrate" (*id.* at 28) must make the statutorily required findings. And, as the district court determined, there is nothing inherent to the nature of an omnibus nondisclosure order that defeats the court's ability to make that finding (JA12). Here, the magistrate had "sufficient facts to permit her to conduct a case- and fact-specific analysis limited to this investigation and subpoenas meeting [specific] criteria. The magistrate judge indeed determined that disclosure of such subpoenas would result in harm, consistent with the [Stored Communication Act.]" (JA60.) Because nothing in the Act precludes judges from issuing multi-subpoena, multi-provider nondisclosure orders, X's statutory challenge fails.

41

## B.  Omnibus Nondisclosure Orders Do Not Violate the First Amendment.

Multi-subpoena, multi-provider nondisclosure orders also comply with the First Amendment. Assuming that strict scrutiny governs the Court's review, the government must "demonstrate that a speech restriction: (1) serves a compelling government interest; and (2) is narrowly tailored to further that interest." *In re Sealed Case*, No. 23-5044, 77 F.4th at 830. The government's interest in "preserving the integrity and maintaining the secrecy of its ongoing criminal investigation" is "unquestionably compelling," *id.*, and unrelated to the omnibus nature of a nondisclosure order. And such an order is narrowly tailored because it is "limited in duration," *id.* at 831, and precludes each recipient "from disclosing only the existence of the subpoena, which is, '[b]y any measure, . . . a narrow slice of speech'" (JA68 (quoting *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 452 (2015)). Each recipient "remained free to raise general concerns about warrants or nondisclosure orders, and to speak publicly about [anything else]." *In re Sealed Case*, No. 23-5044, 77 F.4th at 831.

X's argument to the contrary largely relies on its assertions that multi-subpoena, multi-provider nondisclosure orders allow the

government to replace its judgment for that of the court, and that a court cannot determine at the outset whether nondisclosure is required to avoid a statutory harm (see Br. at 31-32). For the reasons discussed above (at 40-41), this is incorrect. The subpoenas issued under such an order are neither "unspecified" nor "hypothetical" (Br. at 30), but instead are limited to "subpoenas meeting . . . narrowly defined criteria for the particular investigation at issue" (JA61). That criteria is defined by the judge, not the government (see SA1-2). And the court has ample basis to conclude that any subpoena falling within that "specific category" (JA60) will result in a statutory harm. As the district court correctly determined, a multi-subpoena, multi-provider nondisclosure order does not "rid[ ] the government of its burden to prove that restraining disclosure of its investigatory step serves a compelling interest" (Br. at 32). Rather, "[e]ven if the United States ha[s] not drafted the specific subpoena by the time it s[eeks an] omnibus NDO," it still must "offer[ ] sufficient facts for the magistrate judge to determine that an NDO was warranted" and to find "that disclosure of any covered subpoenas, regardless of the exact subscriber information sought or service provider directed to produce that information, would undercut the integrity and secrecy of an ongoing

grand-jury investigation" (JA67).

X is also incorrect that "an omnibus order is by definition not narrowly tailored" because the government can seek "[a]n order that applies only to the specific legal process presented to the magistrate at the time the order is issued" (Br. at 32). An omnibus nondisclosure order, like a single-provider nondisclosure order, only prevents each recipient from disclosing the existence of a subpoena it receives. Regardless of the order's omnibus nature, it still restricts "a narrow slice of speech," *Williams-Yulee*, 575 U.S. at 452, and leaves each recipient "free to raise general concerns about warrants or nondisclosure orders, and to speak publicly about [anything else,]" *In re Sealed Case*, No. 23-5044, 77 F.4th at 831.

Whether "specific legal process [is] presented to the magistrate at the time the order is issued" (Br. at 32) says nothing about whether the order is narrowly tailored: if the government presented ten subpoenas directed at ten providers to the magistrate and requested a nondisclosure order applying to all of them, that order would be just as narrowly tailored, and affect the same amount of speech, as if the government obtained a single omnibus nondisclosure order and subsequently

attached it to ten subpoenas. Each order would be narrowly tailored to further a compelling government interest, and thus permitted by the First Amendment. The district court thus correctly rejected X's argument "that the omnibus nature of the NDO undermines its narrow tailoring" (JA70).

## II. The District Court Did Not Abuse its Discretion When it Denied X's Request for Access to the Government's Application for a Nondisclosure Order.

X argues that the district court abused its discretion when it relied on ex parte evidence to deny X's motion to vacate (Br. at 37-50). This argument is meritless.

### A. Applicable Legal Principles and Standard of Review.

The Supreme Court "consistently ha[s] recognized that the proper functioning of our grand jury system depends upon the secrecy of the grand jury proceedings." *Douglas Oil*, 441 U.S. at 218. "That secrecy safeguards vital interests in (1) preserving the willingness and candor of witnesses called before the grand jury; (2) not alerting the target of an investigation who might otherwise flee or interfere with the grand jury;

and (3) preserving the rights of a suspect who might later be exonerated." *McKeever v. Barr*, 920 F.3d 842, 844 (D.C. Cir. 2019).

The secrecy of grand jury proceedings "is today preserved through [Federal Rule of Criminal Procedure] 6(e)." *In re Motions of Down Jones & Co.*, 142 F.3d 496, 500 (D.C. Cir. 1998). Rule 6(e) prohibits certain persons from "disclos[ing] a matter occurring before the grand jury[.]" Fed. R. Crim. P. 6(e)(2)(B). A matter occurring before the grand jury "includes not only what has occurred and what is occurring, but also what is likely to occur." *In re Motions of Down Jones & Co.*, 142 F.3d at 500. "Encompassed within the rule of secrecy are 'the identities of witnesses or jurors, the substance of testimony' as well as actual transcripts, 'the strategy or direction of the investigation, the deliberations or questions of jurors, and the like.'" *Id.* (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc)).

For due process purposes, it is "the firmly held main rule that a court may not dispose of the merits of a case on the basis of *ex parte*, *in camera* submissions." *Abourezk v. Regan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986). But "due process is flexible and calls [only] for such procedural protections as the particular situation demands." *Morrissey v. Brewer*,

408 U.S. 471, 481 (1972). Thus, "not all ex parte communications must be disclosed, particularly when there is a countervailing need for confidentiality." *Clifford v. United States*, 136 F.3d 144, 149 (D.C. Cir. 1998); *see Gilmore v. Palestinian Interim Self-Government Auth.*, 843 F.3d 958, 967 (D.C. Cir. 2016) ("*ex parte* submissions have been permitted" where there is a "need for secrecy in light of the substantial adverse consequences of disclosure"). In particular, "where an *in camera* submission is the only way to resolve an issue without compromising a legitimate need to preserve the secrecy of the grand jury, it is an appropriate procedure." *In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1994); *see In re Sealed Case*, No. 98-3077, 151 F.3d 1059, 1075 (D.C. Cir. 1998) (quoting same).

This Court "review[s] the district court's decision to review evidence ex parte for abuse of discretion." *Labow v. United States DOJ*, 831 F.3d 523, 533 (D.C. Cir. 2016).

## B. Discussion.

The district court did not abuse its discretion when it denied X's request to "review the government's *ex parte* application in support of the [nondisclosure] Order, in whole, in part, or in summary" (SA35). The

court correctly recognized "that *in camera* review of the Government's *ex parte* submission [wa]s the most appropriate — perhaps the only — means of protecting grand-jury secrecy" (JA72). In the section entitled ██████████████████ the government's application identified who the grand jury was investigating and specific facts underlying their potential crimes (SSA3-4). Elsewhere in the application, the government identified the statute the targets may have violated (SSA1 ██████████████")), the potential length of the investigation (SSA6 ████████████████ ████████████████████████████████████████ ██████)), and some of its expected investigative steps (SSA10 ██████ ████████████████████████████████████████ ██████)). This information consisted of "matter[s] occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B). It described "not only what has occurred and what is occurring, but also what is likely to occur." *In re Motions of Down Jones & Co.*, 142 F.3d at 500. And it revealed "the strategy or direction of the investigation[.]" *Dresser Indus.*, 628 F.2d at 1382; *see Lopez v. DOJ*, 393 F.3d 1345, 1350 (D.C. Cir. 2005) ("the subpoenas and the dates on which they are issued tend to reveal the direction of the relevant investigation"). The district court thus did not

abuse its discretion when it determined that disclosure of the application would "compromis[e] a legitimate need to preserve the secrecy of the grand jury[.]" *In re John Doe, Inc.*, 13 F.3d at 636.[4]

X advances several arguments in support of its position that the district court was required to order disclosure of the government's application, each of which fails. First, X appears to argue that it has an absolute due process right to review the government's ex parte application (Br. at 37-40). Not so. The law is clear that "*ex parte* submissions [are] permitted" where there is a "need for secrecy in light of the substantial adverse consequences of disclosure." *Gilmore*, 843 F.3d at 967. And this Court has "repeatedly approved the use of [ex parte] information when necessary to ensure the secrecy of ongoing grand jury proceedings[.]" *In re Grand Jury Subpoena*, No. 18-3071, 912 F.3d 623,

---

[4] Although parts of the government's application consisted of ███ ████████, the district court did not abuse its discretion by failing to require the government to supply X with a redacted version of its application. X's motion focused on "the 'specific evidence' the government . . . provide[d]" in its application (SA36). And even if the district court did err, any error was harmless. *See* Fed. R. Civ. P. 61. The government filed a surreply in which it set forth analysis supporting its use of an omnibus disclosure order ██████████████████████ (compare SA65-72 with SSA7-11). X thereafter filed a response addressing those arguments (SA73-77).

632 (D.C. Cir. 2019) (quotation marks omitted). That need for secrecy applies regardless of whether the underlying claim implicates the First Amendment (see Br. at 39-40), the attorney-client privilege, *see, e.g.*, *In re John Doe, Inc.*, 13 F.3d at 635, or some other issue, *see, e.g.*, *United States v. Grace*, No. 21-2419, 2023 WL 3243477, at *6-8 (2d Cir. May 4, 2023) (enjoining state-court defamation action). Indeed, it would seem anomalous to find that a third party like X has a due process right to intrude upon grand jury secrecy, but that due process gives no such right to the target of an investigation who seeks to shield communications with his attorney under "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). *See In re Grand Jury Subpoena*, No. 00-1622, 223 F.3d 213, 219 (3d Cir. 2000) (citing cases upholding use of ex parte materials to determine whether crime-fraud exception applies).

X asserts that the district court "did not determine whether the *ex parte* materials implicate any interest in grand-jury secrecy," and "wrongly assumed that the *ex parte* materials bear on the government's 'ongoing interest in grand jury secrecy' simply because this proceeding 'is collateral to a grand-jury investigation'" (Br. at 41 (quoting JA72)). X is

incorrect. The district court intentionally "paint[ed] with a broad brush" so as to "maintain[ ] th[e] secrecy" of the grand jury investigation (JA50). It therefore did not discuss the details of the investigation set forth in the government's application. But the court reviewed that application (JA55) and concluded after doing so that "there can be little doubt that *in camera* review of the Government's *ex parte* submission is the most appropriate — perhaps the only — means of protecting grand-jury secrecy" (JA72). As discussed above, this conclusion was well-founded.

X nonetheless urges that disclosure of the government's application would not reveal a "matter occurring before the grand jury" because the "government's evidence included information 'publicly known about the investigation's targets'" (Br. at 41 (quoting JA55)), and because "'[t]here is no per se rule against disclosure of any and all information which has reached the grand jury chambers'" (*id.* at 42 (quoting *Citizens for Responsibility & Ethics in Wash. v. U.S. Dept. of Justice*, 746 F.3d 1082, 1100-01 (D.C. Cir. 2014)). X's first assertion misreads the district court's order, which, in the quoted excerpt, was responding to X's argument that "there is nothing publicly known about the two users that would support the conclusion that either of them is likely to flee prosecution, tamper

with evidence, intimidate potential witnesses, or otherwise seriously jeopardize any investigation" (JA55). This was "not true," the district court found, because, even "based on what is publicly known about the targets," the government's application had made a "more-than-adequate showing . . . that disclosure of subpoenas meeting the specified criteria will result in" the statutorily delineated harms (*id.*).

In any event, even if the government's application incorporated some publicly known information, disclosing it still would have revealed the nature and scope of the grand jury's investigation. As this and other courts have recognized, even where documents are "independently generated," "[d]isclosure of which documents the grand jury considered reveals, at the very least, the direction of the grand jury's investigation . . . and thus falls within Rule 6(e)(2)." *In re Sealed Case*, No. 86-5246, 801 F.2d 1379, 1381 (D.C. Cir. 1986); *see In re Grand Jury Proceedings*, No. 87-2215, 851 F.2d 860, 865 (6th Cir. 1988) ("Even documents 'sought for their own sake' may, when considered in the aggregate and in their relationship to one another, make possible inferences about the nature and direction of the grand jury inquiry."). Requiring the government to provide its application to X would both "disclos[e] the focus of the

investigation" and "the areas or individuals not being focused on[.]" *In re Sealed Case*, No. 98-3077, 151 F.3d at 1072. The district court thus committed no error when it concluded that the application's disclosure would "compromise the indispensable secrecy of grand jury proceedings." *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991) (quotation marks omitted).

Finally, X is incorrect that the district court was "required to disclose" the government's application because "X's due-process interest outweighed the government's minimal secrecy interest" (Br. at 44). As an initial matter, X forfeited this argument by failing to raise it before the district court. *See generally Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("Absent exceptional circumstances, a party forfeits an argument by failing to press it in district court."). Nowhere in its motion to vacate did X urge the district court to employ a balancing test when deciding whether to disclose the government's application (see SA35-36). Instead, X made a different argument—largely mirroring the one on pages 37 to 40 of its brief—in which it appeared to assert an absolute due process right to review the government's application. X thus forfeited its balancing-test-based argument.

That due process argument is meritless in any event. A district court has no inherent authority to disclose grand jury matters. *McKeever*, 920 F.3d at 844. Instead, it may only do so if one of the exceptions set forth in Rule 6(e) applies. *Id.* Here, the relevant exception is Rule 6(e)(3)(C)(i), which states that a court may direct disclosure "preliminary to or in connection with a judicial proceeding." This exception "require[s] a strong showing of particularized need for grand jury materials before any disclosure will be permitted." *United States v. Sells Eng'g*, 463 U.S. 418, 443 (1983). "Parties seeking such material must show 'that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'" *In re Sealed Case*, No. 98-3077, 151 F.3d at 1074 n.16 (quoting *Douglas Oil*, 441 U.S. at 222).

Here, this test tilts decisively against disclosure. X did not need to review the government's application "to avoid a possible injustice." Even without access to the government's application, X was able to identify ██████████████ as the subscribers of the accounts that were the subjects of the subpoena, to obtain substantial public information about

them, and to use that information in support of both its statutory and constitutional arguments. Those arguments required the district court independently to assess the government's application to ensure that it complied with § 2705(b)'s requirements (JA55) and the First Amendment (JA74). *See generally In re Sealed Case*, No. 81-1717, 676 F.2d 793, 814 (D.C. Cir. 1982) (recognizing that, when adjudicating certain motions, "courts will not be able to receive a complete adversary presentation of the issues, since one of the parties will not be privy to the information at issue").

Additionally, any marginal benefit that might be gained by disclosure was outweighed by the need for continued secrecy. The government's interest in maintaining "the indispensable secrecy of grand jury proceedings," *R. Enters.,* 498 U.S. at 299, is "unquestionably compelling." *In re Sealed Case*, No. 23-5044, 77 F.4th at 830. This interest is "only heighten[ed]" when, as here, the investigation was "ongoing" at the time. *In re Grand Jury Subpoena (Miller)*, 438 F.3d 1138, 1141 (D.C. Cir. 2006). And it was particularly compelling here, where neither ██████████████████ was aware of the nature and scope of the government's investigation (JA55), and where there was significant

evidence that ███████████████████████████████ (SSA3-4, 16-17). Continued secrecy was thus necessary at the time the district court declined X's request for access to the government's evidence, just as in any ongoing investigation.

X's arguments to the contrary fail to meaningfully distinguish this case from the typical ongoing grand jury investigation. X invokes its right to "due process, which 'requires that a party be aware of and allowed to refute "the evidence against the *merits* of his case""" (Br. at 46 (quoting *Clifford*, 136 F.3d at 149)). But X's argument "overstate[s] the strength of [its] due process claim." *Clifford*, 136 F.3d at 149. Ex parte communications "are not per se deprivations of the due process rights of the opposing party . . . and consequently, not all ex parte communications must be disclosed, particularly when there is a countervailing need for confidentiality." *Id.*

On the other side of the balance, the fact that X "already kn[ew] that a grand jury has been convened and that its focus is on potential ███████████████████████████████" (Br. at 47) did not eliminate the need for continued secrecy about the scope and direction of that investigation. Taken to its logical conclusion, X's argument would

mean that, any time a witness is called to testify before the grand jury, there is no need for ongoing secrecy because that witness would then know that a grand jury has been convened and have some idea about the focus of its investigation. That plainly is not the case. *See, e.g.*, *In re Sealed Case*, No. 23-5044, 77 F.4th at 831 ("disclosure would have harmed the integrity and secrecy of the ongoing grand jury investigation, despite public knowledge of the broader investigation"); *In re Grand Jury Subpoena*, No. 00-1622, 223 F.3d at 219 (rejecting argument that disclosure was required because "the nature of the investigation ha[d] already been made public in several contexts"). And were disclosure to third parties (or their attorneys) routinely required simply because a matter is under seal (Br. at 47), it would still potentially undermine "the willingness and candor of witnesses called before the grand jury," *McKeever*, 920 F.3d at 844, whose testimony or cooperation may become known to those third parties, and "the rights of a suspect who might later be exonerated," *id.*, whose potential criminal conduct has been shared with others. There were thus compelling reasons for continued secrecy here.

For that reason, X's reliance (at 45), on *In re Taylor*, 567 F.2d 1183 (2d Cir. 1977), is misplaced. In *Taylor*, the Second Circuit found that "concerns for secrecy [were] weak" because "a party who sought access to an *in camera* submission would learn the contents of the submission as soon as he was called as a grand jury witness[.]" *In re John Doe, Inc.*, 13 F.3d at 636. In contrast, where, as here, "the Government does not intend to reveal the contents of the in camera grand jury material," the "traditional considerations of the need for grand jury secrecy [that] were dissipated in *Taylor* . . . do apply[.]" *In re Special Sept. 1978 Grand Jury (II)*, 640 F.2d 49, 56 (7th Cir. 1980).

There is likewise no merit to X's attempt to distinguish the many cases finding grand jury secrecy to be a compelling interest justifying the use of ex parte materials by minimizing the affected parties' interests in those cases (Br. at 48). The most common of those interests—the attorney-client privilege—is "hallowed," *In re Sealed Case*, No. 89-5102, 877 F.2d 976, 979 (D.C. Cir. 1989), and there is a strong "public interest in respecting confidentiality of communications by clients to their attorneys," *In re John Doe Corp.*, 675 F.2d 482, 490 (2d Cir. 1982). Nonetheless, "the limitations on adversary argument caused by in

camera submissions are clearly outweighed by the benefits of obtaining a judicial resolution of a preliminary evidentiary issue while preserving confidentiality." *Id.* Courts thus have regularly found the interest in grand jury secrecy to justify the use of ex parte information to determine whether the privilege applies. *See, e.g.*, *In re Grand Jury Subpoena*, No. 00-1622, 223 F.3d at 219 (citing cases); *In re Sealed Case*, No. 23-5044, 151 F.3d at 1075 (same).

Tellingly, X cites no case—and the government is not aware of any—in which a court required disclosure of information about an ongoing grand jury investigation so that a third party could more fully litigate a claimed right to disclose information it gained solely by dint of receiving a grand jury subpoena. *See generally In re Sealed Case*, No. 23-5044, 77 F.4th at 831 ("Courts have suggested that such information, procured from the government itself or pursuant to a court-ordered procedure, is entitled to less protection than information a speaker possesses independently.") (citing *Butterworth v. Smith*, 494 U.S. 624, 636 (1990) (Scalia, J., concurring)). Ultimately, as the district court aptly put it, "although it is entirely understandable that X would prefer to review the full NDO Application itself and then file a supplemental brief,

the 'indispensable secrecy of grand jury proceedings' counsels otherwise" (JA75). That conclusion was not an abuse of discretion.

## III. X's Fact-Specific Challenge to the Nondisclosure Order is Moot and Meritless.

X argues that there are "serious doubts about whether the government could have made the factual showing that Section 2705(b) and the First Amendment require" when it obtained the nondisclosure order (Br. at 51). This argument is moot and meritless.

The nondisclosure order has been vacated, and thus this case is moot because "the court can grant no meaningful relief." *Maldonado v. District of Columbia*, 61 F.4th 1004, 1006 (D.C. Cir. 2023) (quotation marks omitted). And the exception for controversies that are "capable of repetition, yet evading review" does not apply to this aspect of X's challenge. "The 'wrong' that is, or is not, 'capable of repetition' must be defined in terms of the precise controversy it spawns." *People for the Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 422 (D.C. Cir. 2005). Here, "the controversy is highly fact-specific[.]" *Id.* at 424. X's argument focuses on ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████ (Br. at 51-54). A "legal controversy so sharply focused on a unique factual context would rarely present a reasonable expectation that the same complaining party would be subjected to the same actions again." *Gittens*, 396 F.3d at 424 (quotation marks omitted); *see, e.g.*, *Shapiro v. United States DOJ*, 40 F.4th 609, 615 (D.C. Cir. 2022) ("The dispute here is incapable of repetition because, rather than presenting legal questions likely to recur in future litigation, it turns on highly fact-specific details") (quotation marks omitted). This aspect of X's appeal is thus moot.[5]

It is also meritless. As the district court correctly concluded, the government's application made "a more-than-adequate showing . . . that disclosure of subpoenas meeting the specified criteria will result in destruction of or tampering with evidence, intimidation of potential witnesses, and serious jeopardy to the investigation" (JA55). *See generally In re Grand Jury Subpoena to Facebook*, No. 16-MC-1300 et al.,

---

[5] Additionally, for the reasons discussed above (at 31-32), X cannot challenge the order's compliance with § 2705(b).

2016 WL 9274455, at *4 (E.D.N.Y. May 12, 2016) ("In most cases, it seems likely that the government can easily make a showing that there is reason to believe that a target's knowledge of an investigation will indeed lead to obstructive behavior"). That was true notwithstanding "what is publicly known about the investigation's targets" (JA55). Nothing about

███████████████████████████████████████████████████████████

█████████████ made it any less likely that they would engage in obstructive behavior were they to learn of the grand jury investigation, and the information in the government's application made clear they were likely to do so notwithstanding their ████████████████████. And ██████████████████████████████████████████████ ████████████████████████ not "that this [wa]s in fact the case" (JA55). The issuing judge thus had sufficient "reason to believe" that "that notification of the existence of the . . . subpoena" would result in one of the harms enumerated in § 2705(d).

The nondisclosure order likewise complied with the First Amendment. In that regard, there is no meaningful difference between this case and *Sealed Case*, No. 23-5044. Here, as there, the government's interests in "preserving the integrity and maintaining the secrecy of its

ongoing criminal investigation" were "unquestionably compelling." *In re Sealed Case*, No. 23-5044, 77 F.4th at 830. And, in both cases, the nondisclosure orders were narrowly tailored because they were limited in duration and applied only to a narrow slice of speech regarding information that X gained as a result of its limited involvement in the government's investigation. *Id.* at 831. Each of those conclusions remains true regardless of ███████████████████████████████ ███████████ JA65-67). The nondisclosure order thus did not violate the First Amendment.

## Conclusion

WHEREFORE, the government respectfully submits that the District Court's order should be affirmed.

> Respectfully submitted,
>
> MATTHEW M. GRAVES
> United States Attorney
>
> CHRISELLEN R. KOLB
> REBECCA G. ROSS
> Assistant United States Attorneys
>
> _____/s/_____
> DANIEL J. LENERZ
> DC Bar #888283905
> Assistant United States Attorney
> 601 D Street, NW, Room 6.232
> Washington, D.C. 20530
> Daniel.Lenerz@usdoj.gov
> (202) 252-6829

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(g) that this brief contains 12,723 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

_____
/s/
DANIEL J. LENERZ
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Redacted Brief for Appellee to be served by e-mail upon counsel for appellant, Ari Holtzblatt, Esq., WILMER CUTLER PICKERING HALE AND DOOR, 2100 Pennsylvania Ave. NW, Washington, D.C. 20037, on this 12th day of July, 2024.

_____
/s/
DANIEL J. LENERZ
Assistant United States Attorney
