**FILED UNDER SEAL**

**[ORAL ARGUMENT NOT YET SCHEDULED]**

**No. 24-5089**

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

IN RE: SEALED CASE

On Appeal from the United States District Court
for the District of Columbia, No. 24-mc-00007 (JEB)
Before the Honorable Chief Judge Boasberg

**REPLY BRIEF FOR APPELLANT X CORP.**

GEORGE P. VARGHESE
WILLIAM C. DARIO
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
george.varghese@wilmerhale.com
will.dario@wilmerhale.com

EMILY BARNET
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
emily.barnet@wilmerhale.com

ARI HOLTZBLATT
BENJAMIN POWELL
MICHAELA WILKES KLEIN
JEREMY W. BRINSTER
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000
ari.holtzblatt@wilmerhale.com
benjamin.powell@wilmerhale.com
michaela.wilkesklein@wilmerhale.com
jeremy.brinster@wilmerhale.com

September 11, 2024

**FILED UNDER SEAL**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 1

ARGUMENT ........................................................................................ 3

I.    NEITHER SECTION 2705(b) NOR THE FIRST AMENDMENT
      AUTHORIZES OMNIBUS NONDISCLOSURE ORDERS ............................. 3

      A.    Section 2705(b) Does Not Permit Omnibus
            Nondisclosure Orders ............................................................ 3

            1.    Neither Grand-Jury Secrecy Rules Nor Efficiency
                  Concerns Can Supersede Section 2705(b)'s Strict
                  Requirements ................................................................ 3

            2.    Nothing In Section 2705(b)'s Text Authorizes
                  Omnibus Nondisclosure Orders ...................................... 5

            3.    There Is No Merit To The Government's Forfeited
                  Argument That X Cannot Challenge
                  Nondisclosure Orders As Unlawful Under Section
                  2705(b) ......................................................................... 9

      B.    Omnibus Orders Are Subject To, And Cannot Satisfy,
            Strict Scrutiny ..................................................................... 12

II.   THE DISTRICT COURT ERRED IN CATEGORICALLY DENYING X
      ACCESS TO ALL *EX PARTE* MATERIALS ......................................... 15

      A.    The Government Lacked Any Secrecy Interest In Public
            Information And Grand Jury Information Already
            Known To X ........................................................................ 15

      B.    The Government Fails to Demonstrate That Any Secrecy
            Interest It Had Outweighed X's Interest In Access ................... 18

            1.    Due Process Forbids Resolving The Merits Based
                  On *Ex Parte* Evidence Except In Exceptional
                  Cases ........................................................................... 19

2.    Whether Under The Due Process Or Rule 6(e)
       Standard, Disclosure Was Required .........................................23

   C.    At A Minimum, The District Court Should Have Ordered
          Disclosure Of Redacted Versions Of The *Ex Parte*
          Submissions...........................................................................27

CONCLUSION ......................................................................................29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES*

### CASES

Page(s)

\* *Abourezk v. Reagan*, 785 F.2d 1043 (D.C. Cir. 1986)..............................................19

*Bailey v. Potter*, 498 F. Supp. 2d 320 (D.D.C. 2007)...............................................11

\* *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) .........................................11, 14

*Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011) ...........................13

*Chapman v. IRS*, 2018 WL 1967114 (D.D.C. Mar. 2, 2018) .................................11

*Freedman v. State of Maryland*, 380 U.S. 51 (1965) .............................................12

*Gilmore v. Palestinian Interim Self-Government Authority*, 843 F.3d 958
     (D.C. Cir. 2016)...................................................................................................19

*In re Application of the U.S. for an Order Pursuant to 18 U.S.C.
     § 2703(d)*, 830 F. Supp. 2d 114 (E.D. Va. 2011) .........................................10

*In re Grand Jury Proceedings*, 851 F.2d 860 (6th Cir. 1988)................................17

*In re Grand Jury Proceedings GJ-76-4 & GJ-75-3*, 800 F.2d 1293
     (4th Cir. 1986) ...................................................................................................24

*In re Grand Jury Subpoena*, 223 F.3d 213 (3d Cir. 2000) ...............................18, 20

*In re Grand Jury Subpoena*, 912 F.3d 623 (D.C. Cir. 2019)...................................19

\* *In re Grand Jury Subpoena Issued to Twitter, Inc.*, 2017 WL 9287146
     (N.D. Tex. Sept. 22, 2017) .................................................................................9

*In re John Doe Corp.*, 675 F.2d 482 (2d Cir. 1982).................................................20

*In re John Doe, Inc.*, 13 F.3d 633 (2d Cir. 1994) ....................................................20

*In re Sealed Case*, 151 F.3d 1059 (D.C. Cir. 1998) .....................................21, 22, 24

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*In re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982) ................................26

*In re Sealed Case*, 77 F.4th 815 (D.C. Cir. 2023) ......................12, 18, 28

*In re Sealed Case*, 801 F.2d 1379 (D.C. Cir. 1986) ..............................26

*In re Search of Information Associated with [redacted]@gmail.com*,
    2017 WL 3445634 (D.D.C. July 31, 2017) ...........................10, 11

*In re Search Warrant for [redacted].com*, 248 F. Supp. 3d 970 (C.D.
    Cal. 2017) ...........................................................................9

*In re September 1975 Grand Jury Term*, 532 F.2d 734 (10th Cir.
    1976) ...............................................................................20

*In re Special September 1978 Grand Jury (II)*, 640 F.2d 49 (7th Cir.
    1980) ...........................................................................20, 27

\* *In re Taylor*, 567 F.2d 1183 (2d Cir. 1977) ..............................21, 22

*Link v. Wabash Railroad Co.*, 370 U.S. 626 (1962) ................................5

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) .............6

*McKeever v. Barr*, 920 F.3d 842 (D.C. Cir. 2019) ...............................23

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021) ........................................4

*SEC v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir. 1980) .........16

*SEC v. National Student Marketing Corp.*, 430 F. Supp. 639 (D.D.C.
    1977) ...............................................................................24

*United States v. Apollomedia Corp.*, 2000 WL 34524449 (5th Cir.
    June 2, 2000) .......................................................................9

*United States v. Beaudoin*, 979 F.3d 1092 (5th Cir. 2020) ...................10

*United States v. Gerace*, 2023 WL 3243477 (2d Cir. May 4, 2023) ...19, 21

*United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983) ..............26

*United States v. Sheffield*, 832 F.3d 296 (D.C. Cir. 2016) ......................9

*United States v. Windsor*, 570 U.S. 744 (2013) ...................................23

**FILED UNDER SEAL**

**DOCKETED CASES**

*In re Application of USA for a 2705(b) Nondisclosure Order for*
*Grand Jury Subpoenas Bearing USAO Case #2023R01292,*
No. 1:23-sc-02631-HBF (D.D.C.)................................................................28

**STATUTES AND RULES**

\* 18 U.S.C.
§ 2703 ......................................................................................10
§ 2705 ..................................................... 1, 3-10, 25, 28

28 U.S.C. § 636.......................................................................................11

Fed. R. Crim. P. 6.............................................................2, 4, 21, 23, 24

D.D.C. Crim. R. 59.3 ...............................................................................11

**OTHER AUTHORITIES**

U.S. Department of Justice, *Justice Manual*,
https://www.justice.gov/jm/jm-9-13000-obtaining-evidence#9-
13.700 (visited Sept. 11, 2024)......................................................8

## INTRODUCTION AND SUMMARY OF ARGUMENT

The government's opposition confirms the district court's error in approving "omnibus" nondisclosure orders like the one at issue here (the "Order"). The government primarily advances mistaken policy arguments that ignore the text of Section 2705(b) of the Stored Communication Act (the "Act"). What little the government says about that text conflicts with its requirements that a nondisclosure order be tied to "the" specific subpoena that "is directed" at a provider and that "the court"—not the government—determine that nondisclosure is needed to prevent a statutory harm. 18 U.S.C. § 2705(b).

Illustrating these fundamental errors, the government relies heavily on a separate order issued by the magistrate judge and disclosed to X Corp. for the first time on appeal (the "Delegating Order"). The government argues that the Delegating Order limits the government to its proper role because it requires the government to determine that legal process satisfies certain criteria before applying the nondisclosure order. But the Delegating Order expressly allows the government to apply the nondisclosure order if it concludes the statutory standards from Section 2705(b) are met, eviscerating the requirement that a court make that assessment.

Nor can the government defend the Order under the First Amendment. The government does not seriously dispute that omnibus orders are prior restraints

subject to strict scrutiny. On compelling interest, the government again argues that omnibus orders are redeemed by limiting-criteria imposed by the judge. But again, as the Delegating Order demonstrates, when the government applies an omnibus nondisclosure order to a particular subpoena, the government itself undertakes the determination that nondisclosure of that subpoena serves a compelling interest, and thus is relieved of the obligation to demonstrate to a court that particular speech restrictions serve that compelling interest. And while omnibus orders may restrict a narrow slice of speech once applied, they violate the First Amendment because they are not narrowly tailored when issued.

Finally, the government cannot defend the district court's categorical denial of access to the *ex parte* materials. The newly disclosed Delegating Order is a perfect example of how denial of access violated X's due process rights. Withholding that order from X did not advance any government interest in secrecy because the Order contains no non-public information that was not already known to X, but it impeded X's ability to defend its First Amendment rights by preventing it from making arguments it is now making about the unlawfulness of omnibus orders. And to the extent the *ex parte* materials contained any secret grand jury information, due process still required disclosure to X. Neither Rule 6 nor the district court's inherent authority can overcome X's due process rights and the

government identifies no case resolving the merits of a constitutional claim on the basis of *ex parte* evidence over a party's objection.

## ARGUMENT

I. **NEITHER SECTION 2705(b) NOR THE FIRST AMENDMENT AUTHORIZES OMNIBUS NONDISCLOSURE ORDERS**

A. **Section 2705(b) Does Not Permit Omnibus Nondisclosure Orders**

The text of Section 2705(b) permits a court to issue a nondisclosure order only if the government applies for an order prohibiting a provider from disclosing the specific subpoena to be served on it, and the court then determines that disclosure of each specific subpoena will result in an enumerated harm. The government must demonstrate that disclosure of "the existence of *the …* subpoena"—not some hypothetical future subpoena not before the court—would result in statutory harm. 18 U.S.C. § 2705(b) (emphasis added). And "[t]he court"—not the government—must "determine[] that there is reason to believe that notification of the existence of *the …* subpoena … will result" in an enumerated harm before ordering nondisclosure. *Id.* (emphasis added).

1. **Neither Grand-Jury Secrecy Rules Nor Efficiency Concerns Can Supersede Section 2705(b)'s Strict Requirements**

The government first seeks to justify omnibus nondisclosure orders not by citing statutory text but by appealing to grand-jury secrecy rules and efficiency concerns that have no bearing here.

The government's suggestion (Opp.35) that courts may issue orders that "allow[] the government to maintain the secrecy of grand jury investigations" by gagging providers has it backwards. As the government acknowledges (Opp.5), grand jury witnesses—such as third-party recipients of grand-jury subpoenas—generally are *not* subject to nondisclosure obligations: Fed. R. Crim. P. 6(e)(2)(A) provides that "[n]o obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)," which deliberately excludes third-party recipients of grand jury subpoenas like X. Section 2705(b) is a narrow exception to this rule, and the government must therefore trace its authority to prohibit disclosure by providers to Section 2705(b)'s text.

The government's claim (Opp.36) that omnibus orders fall within "courts' 'inherent powers'" to ensure efficient docket management likewise fails. The magistrate never invoked inherent powers to gag providers beyond the limits of Section 2705(b). And as X explained, X.Br.33-36, "pleas of administrative inconvenience … never 'justify departing from the statute's clear text," *Niz-Chavez v. Garland*, 593 U.S. 155, 169 (2021). The plain text of Section 2705(b) requires the court to determine disclosure of the particular subpoena directed at the provider will result in statutory harm. X.Br.21-25. The government cites (Opp.36) *Link v. Wabash Railroad Co.*, which recognized that a procedural rule did not silently "abrogate" the "long … unquestioned" authority of courts to dismiss a case *sua*

*sponte.* 370 U.S. 626, 630-632 (1962). *Link* does not establish that a magistrate whose authority is circumscribed by statute and the First Amendment may defy those limits in the name of efficiency and docket management.

> **2.      Nothing In Section 2705(b)'s Text Authorizes Omnibus Nondisclosure Orders**

When the government finally addresses the text, it principally argues Section 2705(b) authorizes "multi-provider, multi-subpoena nondisclosure orders" because of the Dictionary Act's default rule that singular nouns include the plural. Opp.37. That misses the point. Omnibus orders are not unlawful because they apply to multiple subpoenas or multiple providers. An order that analyzed and applied to multiple, existing subpoenas presented to the magistrate could be lawful. An order that applies to an indefinite set of hypothetical future subpoenas issued in the future under hypothetical circumstances cannot. *See* X.Br.21-23. ███████

████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████

The Delegating Order—revealed for the first time six months and six briefs into this litigation—confirms how omnibus orders permit the government to assume the role Congress entrusted to the courts. This order, which the government describes as "illustrative," Opp.39, supposedly limited the

government's role to "evaluat[ing] whether the legal process meets the criteria defined by the judge," Opp.39; SA1-2. But the criteria listed are just *legal* standards drawn directly from Section 2705(b). Under the Delegating Order, the government can decide whether "disclosure of the existence of the subpoena" to which it attaches the nondisclosure order "would result in potential target(s) attempting to evade apprehension, or destroy or encrypt evidence, or otherwise seriously jeopardizing the investigation." SA2. The Delegating Order thus transfers to the government the precise judgment that Congress assigned to "[t]he court." 18 U.S.C. § 2705(b).[1] By specifying that courts, not prosecutors, will decide whether nondisclosure is warranted, Section 2705(b) "codifies … the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2261 (2024).

The government's contention (Opp.38) that Section 2705(b) does not require the government to have "drafted and presented to the court" each subpoena to which the nondisclosure Order will apply cannot be squared with the text. The

---

[1] The Delegating Order's other criteria do not limit this improper delegation. The government may attach the Order to virtually any subpoena covered by the Act, so long as it (1) is issued as part of the investigation; (2) is addressed to a provider as defined by the Act; (3) seeks subscriber information; and (4) is issued within one year. SA1-2.

government argues "[a] subpoena 'is directed' at a service provider" under Section 2705(b) "whether it exists at the time the court issues its nondisclosure order or is instead issued a week later and 'is directed' at the provider then." *Id.* But a subpoena that does not exist cannot be the subpoena that "*is* directed" at a provider under Section 2705(b) (emphasis added); it only *may be* "directed" at a provider at some future date. X.Br.24. Such a hypothetical subpoena certainly is not "directed" at a provider at the moment the court must determine whether the provider should be barred from disclosing that particular subpoena.

The government also is wrong (Opp.39-40) that omnibus orders satisfy Section 2705(b)'s requirement that "[t]he court" determine whether disclosure of "the existence of the … subpoena" will result in statutory harm. It is not true that if a magistrate determines notification will cause harm today, "a court could readily conclude that the same showing establishes that notification tomorrow, next week, or next month would result in the same harm." Opp.40. Circumstances change: investigations become public; targets lose access to evidence and witnesses. And more fundamentally, when the government obtains an omnibus order, the court never makes the required determination because there is no legal process before the court when it purports to analyze whether disclosure of that process will result in statutory harm.

The government's claim (Opp.40) that the "particular account identifiers" targeted by a subpoena are "immaterial to the § 2705(b) assessment" is simply another way of insisting that disclosure of *any* subpoena seeking *any* subscriber information will result in statutory harms by revealing the existence of a criminal investigation. That is contrary to the carefully circumscribed nondisclosure regime that Congress established under Section 2705(b). A magistrate could conclude that disclosing a subpoena seeking information about a private or pseudonymous account where the target publishes controversial posts will result in flight or evidence-tampering, while disclosing a subpoena directed at a public account where the target publishes anodyne content will not. Congress assigned that determination to the court, not the government.

The government also appears to recognize it cannot overcome the plain text based on DOJ guidance that prosecutors may seek a single nondisclosure covering "sets of nearly identical legal process," *see Justice Manual* § 9-13.700(3), as the government does not expressly argue this guidance validates its omnibus Order. The guidance is nonbinding and does not have the force of law. *Id.* § 1-19.000. But even setting that aside, the guidance does not purport to permit "omnibus" nondisclosure orders covering *unspecified* and not-yet-existent legal process. To the extent it did, the guidance would be contrary to federal statute.

### 3. There Is No Merit To The Government's Forfeited Argument That X Cannot Challenge Nondisclosure Orders As Unlawful Under Section 2705(b)

Unable to justify its position on the merits, the government argues that providers cannot challenge nondisclosure orders under Section 2705(b). The government forfeited that argument by "fail[ing] to raise it in district court." *United States v. Sheffield*, 832 F.3d 296, 303 (D.C. Cir. 2016). The government concedes as much, offering no explanation for its forfeiture. Opp.31 n.3. The Court should not reach this argument, which is unprecedented, wrong, and would shield from review an unlawful and apparently widespread government practice.

Courts regularly entertain challenges to nondisclosure orders based on noncompliance with Section 2705(b). The Fifth Circuit did so in *United States v. Apollomedia Corp.*, 2000 WL 34524449, at *3 (5th Cir. June 2, 2000) (per curiam), which X cited below. SA27-28. And as the government acknowledges (Opp.32), another court vacated a nondisclosure order on statutory grounds in *In re Grand Jury Subpoena Issued to Twitter, Inc.*, 2017 WL 9287146, at *6-7 (N.D. Tex. Sept. 22, 2017), *report and recommendation accepted*, 2017 WL 9287147 (N.D. Tex. Oct. 19, 2017). Scores of courts have considered challenges to the duration of nondisclosure orders under Section 2705(b). *E.g.*, *In re Search Warrant for [redacted].com*, 248 F. Supp. 3d 970, 978 (C.D. Cal. 2017) (collecting cases). And others have adjudicated provider challenges to the government's

compliance with the Act on grounds that did not rely on Section 2703(d). *E.g.*, *In re Search of Information Associated with [redacted]@gmail.com*, 2017 WL 3445634, at \*5 (D.D.C. July 31, 2017) (collecting cases on provider challenges to extraterritorial application). Accepting the government's forfeited argument would effect a sea change in the law and ensure that no one—whether providers or subpoena targets—could challenge unlawful nondisclosure orders.

The only cases the government cites (Opp.31-32) are far afield. *In re Application of the U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)* held that *users* of a provider subject to a Section 2703(d) order could not challenge the order under any provision of the Act, because the Act authorizes users to sue only under narrow circumstances not applicable there. 830 F. Supp. 2d 114, 128-129 (E.D. Va. 2011). Nor did *United States v. Beaudoin*, which also involved users, foreclose statutory challenges brought by *providers*. *See* 979 F.3d 1092 (5th Cir. 2020). And in any event, *Beaudoin* considered the merits of the user's statutory argument before concluding the Act foreclosed the ultimate remedy sought (suppression of evidence). *See id.* at 1101.

The government's argument is also wrong. Under its flawed reading of the Act (Opp.31-32), service providers would have no opportunity to move to vacate a nondisclosure order for even flagrant noncompliance with Section 2705(b). But a district court possesses inherent authority "to revisit and alter its own orders."

*Bailey v. Potter*, 498 F. Supp. 2d 320, 321 (D.D.C. 2007). A provider can thus ask the court to reconsider any nondisclosure order pursuant to the court's "inherent authority to control the portion of the district court's docket before her." *Chapman v. IRS*, 2018 WL 1967114, at \*1 (D.D.C. Mar. 2, 2018).

Moreover, a district court may vacate or modify a magistrate judge's nondisclosure order under its supervisory powers, as the district court did here. Magistrate judges issue nondisclosure orders under 28 U.S.C. § 636(b)(3) of the Magistrate Judges Act, which allows them to perform "additional duties" assigned by the district court while "continuously subject to the inherent supervisory control of the district judge." *[redacted]@gmail.com*, 2017 WL 3445634, at \*5. D.D.C.'s Local Criminal Rule 59.3(a) authorizes litigants to activate a district court's "supervisory control" over magistrates. X invoked that rule here, SA18-19, and the district court acknowledged its review of the Order proceeded under that authority, *see* JA053 (citing D.D.C. LCrR 59.3(a)).

Nor can the government's forfeited argument be reconciled with providers' constitutional rights. It would allow a court to impose a prior restraint, in an *ex parte* proceeding, with no opportunity for the gagged provider to challenge the restraint as exceeding the court's statutory authority. A system of prior restraints with "no provision whatever for judicial superintendence … or even for judicial review" violates the First Amendment. *Bantam Books, Inc. v. Sullivan*, 372 U.S.

58, 71 (1963).  And there is no meaningful judicial review where a provider has no

opportunity to raise a nondisclosure order's noncompliance with Section 2705(b).

This Court has held that the First Amendment does not require enhanced

"*Freedman* safeguards" such as maintenance of the status quo while a court

promptly reviews a provider's challenge.  *See In re Sealed Case*, 77 F.4th 815,

833-834 (D.C. Cir. 2023), *petition for cert. filed*, No. 23-1264 (U.S. May 30,

2024).  But it would raise untenable constitutional concerns to deprive providers of

the basic protection against prior restraints that *Freedman* identified: "a judicial

determination in an adversary proceeding."  *Freedman v. Maryland*, 380 U.S. 51,

58 (1965).

### B. Omnibus Orders Are Subject To, And Cannot Satisfy, Strict Scrutiny

Omnibus orders cannot satisfy strict scrutiny.  The government suggests

(Opp.1-2) this Court's decision in *In re Sealed Case*, 77 F.4th 815 (D.C. Cir. 2023)

resolves this question.  But that case did not foreclose First Amendment claims to

nondisclosure orders for all time.  It certainly did not address whether *omnibus*

nondisclosure orders are consistent with the First Amendment (or the Act), and

they are not.  The government cannot demonstrate a compelling interest in

nondisclosure of legal process that does not even exist and the government could

obtain a narrower order that applies only to existing subpoenas.

The government is wrong (Opp.42) that omnibus nondisclosure orders serve a compelling interest in investigation integrity and secrecy "unrelated to the omnibus nature of a nondisclosure order." With an omnibus order, the government never demonstrates a compelling interest in prohibiting disclosure of its specific investigatory step, as strict scrutiny requires. The government pretends (Opp.43) a subpoena that exists merely in the government's imagination is "neither 'unspecified' nor 'hypothetical'" because it must "'meet[] … narrowly defined criteria.'" But in deciding that these "criteria" are met, the government never provides the required "proof" of a "direct causal link" between disclosure of specific legal process and the purported harms to investigation integrity and secrecy. *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 799-800 (2011). Instead, the government determines for itself that prohibiting disclosure of a future subpoena is necessary to safeguard an investigation, without advancing any further proof that restricting disclosure would serve a compelling interest. SA2. That is particularly dangerous in the context of sealed, *ex parte* applications, where the provider receiving the nondisclosure order never even learns of the criteria purportedly applied by the government and the court never reviews the government's compliance with those criteria.

The government also is wrong (Opp.44-45) that an omnibus order is narrowly tailored because it "only prevents each recipient from disclosing the

existence of a subpoena it receives," likening it to a scenario in which "the government presented ten subpoenas directed at ten providers to the magistrate and requested a nondisclosure order applying to all of them." That is distinctly not the scenario here—the government did not "present[]" *any* subpoena "directed at" *any* provider to the magistrate judge. Instead, it asked the court for sweeping authority to gag providers from speaking about hypothetical future legal process. An omnibus order capable of restricting speech by any provider based on the government's determination that certain legal criteria are met is not narrowly tailored even if each of its applications would, in isolation, only restrict speech by a single provider.

Nor can a system of prior restraints survive merely because it is applied to individual speakers. In *Bantam Books*, the Supreme Court invalidated a scheme empowering a state commission to notify book publishers that certain of their titles had been declared "objectionable" and to remind the publishers of the commission's duty to recommend purveyors of obscenity to the state attorney general. *See* 372 U.S. at 60-63. The "acts and practices" of the commission "directly and designedly stopped the circulation" of speech by the publishers, even if it did so through individual letters to specific publishers about specific books. *Id.* at 68.

## II. THE DISTRICT COURT ERRED IN CATEGORICALLY DENYING X ACCESS TO ALL *EX PARTE* MATERIALS

Due process required that X have access and an opportunity to respond to the *ex parte* materials. The government cannot defend the district court's decision to categorically withhold them. First, the government has no secrecy interest in the public information and information already known to X contained in the *ex parte* materials, and the government does not contend that it could withhold materials absent such an interest. Second, to the extent the government had a secrecy interest in any of the materials, that interest was outweighed by X's due-process interest in accessing the evidence and arguments relied on in resolving the merits of its First Amendment claim.

### A. The Government Lacked Any Secrecy Interest In Public Information And Grand Jury Information Already Known To X

The government does not assert, and the district court did not find, that it had any basis for relying on *ex parte* materials that would not have revealed *any* secret grand jury matter. Yet, that is precisely what it did.

*First*, the *ex parte* submissions included public information. The government is wrong (Opp.51) that X misreads the district court's opinion on this point. X argued below (SA27-29) that nothing publicly known about the two users supported the nondisclosure Order. The court rejected that argument because its "review of the *Ex Parte* [nondisclosure Order] Application confirm[ed] that it

offered a more-than-adequate showing—based on what is publicly known about the investigation's targets—that disclosure of the subpoena" would risk statutory harms, citing multiple pages of the government's application. JA055. In other words, the court relied on public information in the application to reject X's argument. Indeed, while the government's continued reliance on *ex parte* material on appeal makes it impossible for X to confirm, the government appears to concede that its *ex parte* application included public information. After listing alleged grand jury information in the application, the government admits that "parts of the government's application consisted of [REDACTED]," Opp.49 n.4, before arguing that the district court's failure to supply that information in a redacted version of the application was harmless (which it was not, *see infra* p.28). This footnote suggests the application contained public information.

Disclosing public information would not have revealed any secret grand jury matter, and the government does not seriously argue otherwise. As X explained (X.Br.42-44), and the government does not dispute, "it is not a valid defense to disclosure that the same information was revealed to a grand jury." *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980). The government asserts (Opp.52-53) that disclosing whether the grand jury considered certain public information generally implicates grand jury secrecy, but never actually contends that disclosing the public information in the *ex parte* materials would

have revealed whether the grand jury considered that information. And there is no reason to think it would: The government's reliance on public information to obtain and defend a nondisclosure order does not reveal that the same information was provided to the grand jury. Similarly, the government (Opp.52) cites the general principle that "documents … in the aggregate" could permit a party to "make possible inferences about the nature and direction of the grand jury inquiry," *In re Grand Jury Proceedings*, 851 F.2d 860, 865 (6th Cir. 1988), but does not explain whether or why that is the case with the public materials in the *ex parte* filings, especially in light of what X already knew about the investigation.

*Second*, the government had no secrecy interest in grand jury information already known to X. The government acknowledges (Opp.56) that X already knew that a grand jury had been convened and that it was investigating the two accountholders. The government's attempts to defend withholding this same information from X mischaracterize X's arguments. The "logical conclusion" of X's argument is not that grand jury secrecy evaporates whenever a witness testifies before the grand jury. *See* Opp.56-57. X's argument is narrower: the government has no interest in withholding from a grand jury witness the specific information that the grand jury witness already knows. Neither of the government's cases held otherwise. *In re Grand Jury Subpoena* rejected a subpoena target's request for information the target did not already have, such as "excerpts of witness

testimony." 223 F.3d 213, 219 (3d Cir. 2000). And *In re Sealed Case* is even further afield, rejecting X's challenge to a nondisclosure order after concluding that X sought to disclose still-secret information to the target of the grand jury. 77 F.4th at 831.

Nor, contrary to the government, is X arguing for "routine[]" disclosure to third parties "simply because a matter is under seal." Opp.57. X's argument is that the government has no interest in withholding from a litigant in a sealed proceeding information the litigant already knows. Such disclosure would not undermine the candor of witnesses or the rights of suspects and the government does not argue otherwise.

The district court thus erred in withholding public information and information revealing only that a grand jury had been convened to investigate the two accountholders.

### B. The Government Fails to Demonstrate That Any Secrecy Interest It Had Outweighed X's Interest In Access

It is not clear that the *ex parte* materials include any nonpublic information not known to X, but to the extent they do, due process required disclosure because X's interest in access outweighed the government's interest in secrecy.

1. **Due Process Forbids Resolving The Merits Based On *Ex Parte* Evidence Except In Exceptional Cases**

A court may "rel[y] upon *ex parte* evidence to decide the merits of a dispute" in "[o]nly . . . the most extraordinary circumstances," *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986), *aff'd*, 484 U.S. 1 (1987), where a party's "'compelling . . . interest'" in secrecy outweighs the other party's due process interest in disclosure, *United States v. Gerace*, 2023 WL 3243477, at *3 n.2 (2d Cir. May 4, 2023); *see also* X.Br.37-50. This was not such a case.

*First*, as X explained (X.Br.49-50), due process is more forgiving of *ex parte* submissions in discovery or evidentiary disputes than merits disputes. Yet the government relies nearly entirely on cases involving evidentiary disputes. For example, *In re Grand Jury Subpoena* approved of using *ex parte* evidence to resolve a motion to quash a grand-jury subpoena based on sovereign immunity. 912 F.3d 623, 632 (D.C. Cir. 2019). And *Gilmore v. Palestinian Interim Self-Government Authority* not only approved of *ex parte* consideration of a memorandum to resolve a discovery dispute but also in that case, unlike here, the memorandum "offered no relevant information that was not already in Appellant's possession," 843 F.3d 958, 967-968 (D.C. Cir. 2016).

In fact, the bulk of the government's cases (Opp.47, 56, 58-59) involve a particular type of discovery dispute where the government has an especially strong interest in *ex parte* treatment: to determine whether to compel a target-client's

19

subpoenaed attorney to testify before the grand jury over a privilege objection

because the crime-fraud exception applies. *See In re Grand Jury Subpoena*, 223

F.3d at 219; *In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1994); *In re John Doe

Corp.*, 675 F.2d 482, 490 (2d Cir. 1982); *In re Special September 1978 Grand Jury

(II)*, 640 F.2d 49, 56 (7th Cir. 1980). As X explained (X.Br.48-50), in those cases,

the balance of interests weighs heavily in the government's favor. The

government's only response is that it would "seem anomalous" to find that X has a

due process right to full adversarial review on its First Amendment claim but that

the target of a grand jury investigation has no such right on a privilege claim.

Opp.50; *see also id.* 58-59. The government is wrong. Permitting adversary

review about the crime-fraud exception in a target's challenge to a grand-jury

subpoena would "allow[] a contest on the question of criminal activity or not,"

which is "determinable only in a trial on the merits" and which "would assuredly

impede its (the grand jury's) investigation." *In re September 1975 Grand Jury

Term*, 532 F.2d 734, 737 (10th Cir. 1976). This case does not present those

concerns: X sought access and an opportunity to respond to *ex parte* materials in

an ancillary proceeding that challenged not the grand-jury subpoena but the

nondisclosure Order accompanying it. *See also id.* (contrasting cases where courts

had ordered disclosure of grand-jury materials at trial on the merits).

The one case the government cites resolving the merits of a claim confirms X's position because it relied on *ex parte* materials only after finding "'extraordinary'" circumstances. *Gerace*, 2023 WL 3243477, at *3 n.2. The government had moved to enjoin defamation actions filed by a criminal defendant against individuals he believed were witnesses against him and the district court granted the motion *ex parte*. *Id.* at *2. The Second Circuit concluded that the government's compelling interests—"in protecting witnesses from threats and intimidation, preserving grand jury secrecy, and enforcing the federal criminal discovery rules"—outweighed the defendant's interest in disclosure because the defendant was aware of the charges and the government had reason to believe he would intimidate witnesses. *Id.* at *2-3 & n.2. Here, by contrast, X is not the subject of the grand jury's investigation and there was no suggestion that X would breach confidentiality or hinder the investigation.[2]

Finally, the government fails to distinguish *In re Taylor*, 567 F.2d 1183 (2d Cir. 1977). *See* Opp.58. *Taylor* concluded that disclosure was warranted because, as here, *ex parte* materials were being offered "in derogation of basic constitutional rights" and the requesting party sought only the "limited and discrete disclosure of

---

[2] Another of the government's cases, *In re Sealed Case*, 151 F.3d 1059 (D.C. Cir. 1998) (per curiam), is far afield as X explained (X.Br.50) because it concerned, and turned on the unique nature of, a Rule 6(e)(2) proceeding. The government offers no response.

the factual basis" for the government's claim. 567 F.2d at 1188-1189. While

*Taylor* concerned materials that would soon be released, imminence was merely a

relevant factor, not a prerequisite, to disclosure.

*Second*, the government is wrong (Opp.53) that X forfeited its balancing test

argument. X argued, as it has here (X.Br.37-40), that the government interest in

secrecy could not overcome X's due process interest in reviewing the evidence and

arguments raised against it. The district court understood X to have advanced that

argument and attempted to balance the parties' competing interests. Its decision

acknowledged X's due process interest, but found that the government had a

compelling interest in preserving grand jury secrecy that overrode X's due process

interest. JA071-072 (quoting *In re Sealed Case*, 151 F.3d 1059, 1075 (D.C. Cir.

1998 (per curiam))). X cannot have forfeited an argument that the court directly

addressed. And this Court should address the argument even if forfeited. The

parties agree the dispute as to this specific Order is moot but that this Court retains

jurisdiction over this appeal because this issue is capable of repetition yet evading

review. *See* Opp.60-63. Because the Court is exclusively providing prospective

guidance, it should clarify the proper governing standard and not limit itself

because of any supposed forfeiture.

### 2. Whether Under The Due Process Or Rule 6(e) Standard, Disclosure Was Required

The government is wrong—and never argued below—that even if due process required disclosure, the district court lacked authority to order it because of Rule 6(e). *See* Opp.54. The government relies on *McKeever v. Barr*, 920 F.3d 842, 844 (D.C. Cir. 2019), for the proposition that "[a] district court has no inherent authority to disclose grand jury matters" and "may only do so" pursuant to Rule 6(e)'s exceptions. Opp.54. But *McKeever* has no bearing here: It involved a request from a historian for the "release of all of the grand jury testimony and records" based solely on courts' purported "'inherent supervisory authority'" to disclose matters of historical significance. 920 F.3d at 844. Here, X asserted a due process right to access information the government was relying on to defend a prior restraint on X's speech. Rule 6 cannot displace the due process guaranteed by the Constitution. *See United States v. Windsor*, 570 U.S. 744, 774 (2013) ("[Congress] cannot deny the liberty protected by the Due Process Clause of the Fifth Amendment.").

In any event, the tests under Fed. R. Crim. P. 6(e)(3)(E)(i) and the Due Process clause overlap, as both weigh the competing interests for and against disclosure. *See* Opp.54-60 (addressing both analyses without distinguishing). Rule 6(e)(3)(E)(i) permits disclosure where a party demonstrates "that the material they seek is needed to avoid a possible injustice in another proceeding, that the

need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *In re Sealed Case*, 151 F.3d at 1074 n.16. Both tests required disclosure here.

*First*, as X explained, its interest was substantial because the government and district court relied extensively on evidence and arguments withheld from X. *See* X.Br.37-38. In the Rule 6 context, "it would be exceedingly inequitable, discriminatory and contrary to the principles of federal discovery to allow one party access to the grand jury [materials] but not the remaining part[y]" and thus a particularized need exists for the party without access. *SEC v. Nat'l Student Marketing Corp.*, 430 F. Supp. 639, 641(D.D.C. 1977); *see also In re Grand Jury Proceedings GJ-76-4 & GJ-75-3*, 800 F.2d 1293, 1303-1304 (4th Cir. 1986) ("[I]t is contrary to the wholesome spirit of modern federal procedure to deny to one party evidence available to the other party."). Here, X's need was even greater because the government not only possessed but relied on *ex parte* materials in opposing X's claims.

The government does not dispute that fact but says it was sufficient that X was able to identify the targeted users and to locate and rely on public information about them. Opp.54-55. That X could raise certain arguments does not mean it was not hampered by its inability to respond to the government's evidence. Nor

does it mean that X was able to raise all the arguments it would have with access to the *ex parte* materials.

Indeed, the newly disclosed Delegating Order is central to the opposition (Opp.13, 39, 43, 48) and this reply (1, 5-6, 25). That order concluded "[t]he omnibus Order is warranted based on the nature of the criminal activity, the volume of expected subpoenas, and the burden that separate applications would pose for the investigation and for the Court." SA1. Without that order and its supposed justifications, X was unable to argue that all investigations employing 2705(b) orders are criminal investigations, such that the magistrate's unelaborated appeal to "the nature of the criminal activity" provides no justification for an omnibus order. And only now can X understand that the magistrate expressly delegated to the government its power under Section 2705(b) to decide whether disclosure would result in statutory harms and explain how this demonstrates that the government's use of omnibus nondisclosure orders is unlawful both in theory and in practice. *Supra* pp.5-6.

Nor does the district court's "independent[]" review of the *ex parte* information cure the harm to X. Opp.55. That review is no substitute for X's ability to rebut the government's claimed rationales because due process guarantees adversarial adjudication whereas *ex parte* proceedings leave the district court "to perform what is naturally and properly the function of an advocate."

X.Br.40.  The government acknowledges this baseline rule but argues that "when adjudicating *certain* motions, 'courts will not be able to receive a complete adversary presentation of the issues.'" Opp.55 (quoting *In re Sealed Case*, 676 F.2d 793, 814 (D.C. Cir. 1982) (emphasis added)).  But, as discussed, the government cites no example of courts adjudicating constitutional claims based on *ex parte* evidence over objection.  *In re Sealed Case* dealt with the entirely different context where the target of a grand-jury investigation sought to quash a subpoena on privilege grounds and did not involve a challenge to the use of *ex parte* materials.  676 F.2d at 814.

*Second*, by contrast, any government interest in secrecy was weak.  Both the government and district court justified categorically withholding the *ex parte* submissions based on their tangential relation to the grand jury's investigation without balancing the competing interests as to specific grand jury information as due process requires.  *See United States v. Sells Engineering Inc.*, 463 U.S. 418, 445 (1983).  But the nature of the particular grand jury information at issue bears on the weight given to the government's secrecy interest.  *See, e.g., In re Sealed Case*, 801 F.2d 1379, 1381-1382 (D.C. Cir. 1986) (Scalia, J.) ("[T]he degree of exposure of the grand jury process inherent in the revelation of subpoenaed documents is lesser than the degree of disclosure attributable to publication of witness transcripts.").

Here, the government had minimal interest in nondisclosure of the broad categories of information at issue, which it has disclosed to X for the first time on appeal: "specific facts underlying [the targets'] potential crimes," "the statute the targets may have violated," "the potential length of the investigation," and "some of its expected investigative steps." Opp.48. Disclosure of this type of information—unlike, for example, grand-jury transcripts or the identities of witnesses—is relatively unlikely to impact the willingness or candor of witnesses called before the grand jury. *See In re Special September 1978 Grand Jury (II)*, 640 F.2d at 56 (explaining "the policies behind the need for grand jury secrecy d[o] not apply" where the materials in question "contain[] no information elicited from witnesses or complainants before the grand jury and thus would not discourage current or future witness participation"). That is particularly true here: X was not the target of the investigation, there was no suggestion X might have impeded the investigation, X was subject to a nondisclosure order, and the proceeding was sealed. Nor can the government demonstrate that disclosure of this information to X would have risked harming the interests of the targeted users since X was already aware of their identities.

C.     **At A Minimum, The District Court Should Have Ordered Disclosure Of Redacted Versions Of The *Ex Parte* Submissions**

To the extent there was any grand jury information in the *ex parte* materials that the government could justify withholding, the appropriate remedy was to

provide redacted materials to X. Because X lacked access, it was incumbent on the

district court to parse the materials to determine whether they could be produced to

X with redactions. It is not clear from the opinion that it did. The government

flatly asserts the district court scrutinized the "details," while recognizing the

opinion concededly "paint[s] with a broad brush." Opp.50-51. This Court should

carefully scrutinize that assessment on appeal. The government is wrong that any

error in the district court's refusal to provide redacted versions of the *ex parte*

materials was harmless. *See* Opp.49 n.4. The government and district court relied

extensively on the *ex parte* submissions to resolve X's claims on the merits

challenges while denying X the opportunity to respond to those submissions. *See*

X.Br.38-39. That resulted in significant due process injury to X.[3]

---

[3] The Order was vacated on the government's motion after X filed its opening brief. Order, No. 1:23-sc-02631-HBF (D.D.C. June 14, 2024). As the government acknowledges, Opp.xii-xiii, this vacatur does not moot X's dispute over the government's use of omnibus orders or *ex parte* submissions. This Court has had "no trouble" holding that a challenge to a nondisclosure order is "capable of repetition yet evading review." *In re Sealed Case*, 77 F.4th at 826-828. X likely "will again be confronted by an order of this sort." *Id.* at 827. The government explains "omnibus NDO orders are not novel" and are "regularly issued" at the government's request, SA67 n.1, and vigorously defends omnibus orders as "compli[ant] with § 2705(b)," Opp.33. The government also "expects that it will seek to rely on ex parte evidence" in defending future nondisclosure orders. Opp.xii. And such orders "typically ha[ve] a limited duration" that is "'too short' to be fully litigated before [their] expir[ation]." *In re Sealed Case*, 77 F.4th at 827.

## CONCLUSION

This Court should reverse the district court's judgment.

Respectfully submitted,

/s/ *Ari Holtzblatt*

|  |  |
|---|---|
| GEORGE P. VARGHESE | ARI HOLTZBLATT |
| WILLIAM C. DARIO | BENJAMIN POWELL |
| WILMER CUTLER PICKERING | MICHAELA WILKES KLEIN |
|   HALE AND DORR LLP | JEREMY W. BRINSTER |
| 60 State Street | WILMER CUTLER PICKERING |
| Boston, MA 02109 |   HALE AND DORR LLP |
| (617) 526-6000 | 2100 Pennsylvania Avenue, NW |
| george.varghese@wilmerhale.com | Washington, DC 20037 |
| will.dario@wilmerhale.com | (202) 663-6000 |
|  | ari.holtzblatt@wilmerhale.com |
| EMILY BARNET | benjamin.powell@wilmerhale.com |
| WILMER CUTLER PICKERING | michaela.wilkesklein@wilmerhale.com |
|   HALE AND DORR LLP | jeremy.brinster@wilmerhale.com |
| 7 World Trade Center |  |
| 250 Greenwich Street |  |
| New York, NY 10007 |  |
| (212) 230-8800 |  |
| emily.barnet@wilmerhale.com |  |

September 11, 2024

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g)(1) and D.C. Circuit Rule 32(e)(2)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 6,498 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


                                                            /s/ *Ari Holtzblatt*
                                                            ARI HOLTZBLATT

September 11, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of September 2024, I caused the

foregoing notice of appeal to be served by email upon:

Daniel J. Lenerz
Assistant United States Attorney
601 D Street, NW, Room #6.232
Washington, DC 20530
 (202) 252-6829
Daniel.Lenerz@usdoj.gov

/s/ *Ari Holtzblatt*
ARI HOLTZBLATT